**William G. PARKER and Julia Parker, Plaintiffs–Appellants,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Richard Lyng, Secretary; Lawrence Mashburn; and Union National Bank, Defendants–Appellees.**

No. 88–5694.

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1989.

Decided July 13, 1989.

Christopher Driver (argued), Tullahome, Tenn., for plaintiffs-appellants.

Christopher Driver, Tullahome, Tenn., for Julia Parker.

Gary Humble, Asst. U.S. Atty. (argued), Chattanooga, Tenn., Marilyn L. Hudson, Asst. U.S. Atty., Knoxville, Tenn., for U.S. Dept. of Agriculture.

Marilyn L. Hudson, Asst. U.S. Atty., Knoxville, Tenn., for Richard Lyng.

R. Whitney Stevens (argued), Fayetteville, Tenn., for Lawrence Mashburn and Union Nat. Bank, a corp. doing business in Tennessee.

Before KEITH and KENNEDY, Circuit Judges, and McQUADE, District Judge.*

KEITH, Circuit Judge:

Appellants, William G. Parker and his wife Julia Parker, appeal the order of the district court denying their request for a preliminary injunction in this action to prevent foreclosure. The Parkers contend that they are entitled to certain appeal rights under the Consolidated Farm and Rural Development Act, as amended, 7 U.S.C. § 1921. For following reasons, we AFFIRM.

## I.

On June 29, 1984, the Parkers received two guaranteed loans through the United States Department of Agriculture, Farmers Home Administration ("FmHA")[1] for a total of $400,000 from Union National Bank, now Dominion Bank ("the Bank"), and secured by their 1100 acre farm in Lincoln County, Tennessee. In 1985, the Parkers defaulted on their loan payments. The Bank and FmHA met with the Parkers in 1986 to discuss how to resolve their indebtedness. The Bank recommended that the Parkers sell some of their land and scale down their farming operation to reduce their financial burden. On October 25, 1986, the Parkers voluntarily sold 640 acres

---

* The Honorable Richard B. McQuade, Jr., U.S. District Judge for the Northern District of Ohio, sitting by designation.

1. FmHA characterized the loans as Economic Emergency loans and guaranteed 90% of the face value.

of their farm to avoid complete foreclosure on all 1100 acres. The proceeds from this transaction failed to satisfy the Parkers' indebtedness, and in 1987, Mr. Parker filed for bankruptcy under Chapter 12. The bankruptcy court, however, dismissed that petition on March 9, 1988. The Parkers have made no other attempts to repay their debt and have been continuously in default since 1985.

The Bank arranged several meetings and proposed several plans to help the Parkers resolve their financial problems before initiating the foreclosure proceedings on the remaining property. The Parkers, however, rejected each plan proposed by the Bank. On April 20, 1988, the Parkers applied for a temporary restraining order to prevent the Bank from foreclosing on their farm and to prohibit FmHA from approving the foreclosure or otherwise assisting in any way to liquidate the property through foreclosure. The district court granted the temporary restraining order as to the Bank and denied the application prohibiting FmHA from cooperating with the Bank.

At an evidentiary hearing held on May 2, 1988, the Parkers requested that the district court prevent the Bank from foreclosing on their property prior to final resolution of this lawsuit. The Parkers also asked that the district court require the government to confer upon them specific appeal rights as borrowers they allegedly claim they were entitled to having obtained a FmHA guaranteed loan. After reviewing the testimony given at this hearing,[2] the district court denied the Parkers' requests. This appeal followed.

## II.

### The Farmer's Home Administration Program

In 1972, Congress gave the Secretary of Agriculture the authority to guarantee loans made to farmers by private lending institutions. 7 U.S.C. § 1929(h) provides that:

The Secretary may provide financial assistance to borrowers for purposes provided in this chapter by guaranteeing loans made by any Federal or State chartered bank, savings and loan association, cooperative lending agency, or other legally organized lending agency.

7 U.S.C. § 1929(h). Although the Secretary is permitted to guarantee these loans, whether the loan is actually made is left to the discretion of the lending institution. If a lender elects to make a loan guaranteed by the Secretary through FmHA, the lender must submit a Request for Guarantee form to the FmHA. The individual borrower is not involved in this procedure and does not sign the request form. FmHA may then advise the lender that the guarantee loan request is approved "subject to the completion of all conditions and requirements set forth in 'Conditional Commitment for Contract of Guarantee.'" 7 C.F.R. § 1980.6(a)(4). This form is signed only by FmHA. Once the lender has satisfied its obligations, it may enter a Lender's Agreement with FmHA. The borrower does not sign this agreement and is not a party to the transaction between the lender and FmHA.

Once FmHA grants the guarantee, a contractual relationship between FmHA (guarantor) and the lender (guarantee) is created. FmHA approves the lender's request for a guarantee in consideration for the lender's promise to approve the borrower's loan and advance the funds requested. There is no privity of contract between the borrower and FmHA, and the borrower provides no consideration. The borrower is only a party to the contract with the lender; and exchanges a promise to repay the loan at some date in the future for the lender's promise to approve the loan. This promise is between the borrower and the lender and not FmHA. Additionally, the lender is not an agent of FmHA nor is the lender permitted to act as the agent or representative of FmHA. The funds advanced are those of the lender and not FmHA. FmHA and the lender are completely autonomous orga-

---

**2.** Testifying at the evidentiary hearing were: Mr. Parker, Johnny Baugh, the vice-president of the Bank; and Frank Rodgers, Chief of FmHA's Farmers Programs.

nizations and have no authority to influence the actions of one another. Although the lender may behave in a manner that affects its right to demand payment under the guarantee agreement, that conduct will not influence the lender's rights and duties with respect to the borrower.

## III.

The Parkers argue that they may challenge FmHA's approval of the Bank's decision to foreclose by exercising the appeal procedures outlined in 7 C.F.R. § 1980.80 and Subpart B, Part 1900.

## A.

■ The Parkers erroneously rely on the appeal procedures established for the benefit of applicants of FmHA guaranteed loans as specified in 7 C.F.R. § 1980.80 which provides that:

Only the borrower and the lender can appeal an FmHA decision. They must jointly participate in the written request for review of the alleged adverse decision made by FmHA. In cases where FmHA has denied or reduced the amount of final loss payment to the lender, the adverse decision may be appealed by the *lender only.* Appeals from decisions involving ... Economic Emergency loan guarantees will be handled in Subpart B of Part 1900 of this chapter.

7 C.F.R. § 1980.80 (emphasis added). In this case, however, the Parkers are no longer applicants, having already received two FmHA guaranteed loans from the Bank; therefore, they are not entitled to these appeal rights.

## B.

Since this was an Economic Emergency loan, Subpart B of Part 1900 is applicable. This section is identified as "Farmers Home Administration Appeal Procedure" and reads in pertinent part as follows:

3. Additionally, sections 1980.80 and 1900.51 specifically preclude a borrower from appealing a FmHA decision that denies or reduces the amount of final loss payment to the lender. Although a denial or reduction in the amount of

If an adverse decision is made by FmHA on a guaranteed loan application, the borrower *and* the lender must participate jointly in any appeal. In cases where FmHA has denied or reduced the amount of final loss payment to the lender, the adverse decision may be appealed by the lender only.

7 C.F.R. § 1900.51 (emphasis added).

According to the plain language of these sections, both the lender and the borrower must challenge the rejection of an application for a loan guarantee. This requirement underscores the importance of the lender's relationship with FmHA, because it would be futile for the borrower to appeal unless the lender wants to make the loan. Even if the borrower's appeal was successful, the borrower would still be forced to deal with the lender's decision to reject the loan. We therefore agree with the district court's conclusion that there is no language in these regulations to support their claim that they are entitled to appeal the FmHA's approval of the Bank's decision to foreclose.[3]

In resolving this issue we also find it important to examine the agency's interpretations of the regulations. According to the testimony of Frank Rodgers, Chief of FmHA's Farmer's Programs, the agency intended for borrowers to have the right of appeal only through the application process, and then, only if the lender joined the borrower in the appeal. *See* Memorandum Opinion at 12–13. A court should defer to an agency's interpretation of its own regulations so long as that interpretation is reasonable. See *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Monger v. Bowen,* 817 F.2d 15, 18 (4th Cir.1987).

The Parkers also rely on 7 U.S.C. § 1983b to bolster their argument that they are entitled to appeal the decision to foreclose on their property. Although 7 U.S.C. § 1983b specifically addresses appeals, it is limited to the following conditions:

the final loss payment would have an adverse impact on the borrower where the loans are guaranteed by FmHA, as in this case, the regulations do not provide for such an appeal right by the borrower.

The Secretary shall provide an applicant for or borrower of a loan, or an applicant for or recipient of a loan guarantee, under this chapter who has been directly and adversely affected by a decision of the Secretary made under this chapter (hereafter in this section referred to as "appellant") with written notice of the decision, an opportunity for an informal meeting, and an opportunity for a hearing with respect to such decision, in accordance with regulations issued by the Secretary consistent with this section.

7 U.S.C. § 1983b. The regulations referred to in this code section restrict the right of appeal to an applicant or recipient of a loan guarantee. In this case, the Bank is the recipient of the loan guarantee; and the Parkers are neither applicants nor recipients.

### IV.

■ The Parkers next argue that they are entitled to certain appeal rights as third party beneficiaries of the Lender's Agreement. We disagree. Absent privity of contract, a party may not appeal an agency decision made pursuant to the contract between the agency and the Bank. *Campbell v. American Limestone Co.,* 109 F.Supp. 741, 747 (E.D.Tenn.1951), *aff'd* 201 F.2d 670 (6th Cir.1952). No duty is owed to a third party unless the intended object or purpose of the contract is for the specific benefit of that third party. *Tennessee Valley Authority v. Exxon Nuclear Co., Inc.,* 753 F.2d 493, 498 (6th Cir.1985). The Par-

kers mistakenly contend that certain provisions of the Lender's Agreement are specifically for their benefit,[4] and must be complied with before any adverse action may be taken. Section XI of the Lender's Agreement dictates the responses available to the Bank in the event of a default. Section XI sets forth the requirements the Lender must meet in order to successfully recover any loss against FmHA under the loan guarantee, and are not, as the Parkers argue, the guidelines upon which liquidation is conditioned. The section protects the Bank's rights under the guarantee when complied with, and is for the benefit of FmHA only, and not the borrower.

### V.

■ The Parkers' request for a preliminary injunction is based on an alleged due process violation. The Parkers contend that as third party beneficiaries of the contract between the Bank and FmHA, they were entitled to notice prior to foreclosure. The district court found, and we agree, that the Parkers received sufficient notice. Even though the Parkers were not third party beneficiaries, they were aware that if they remained in default, foreclosure was imminent. In fact, one of the requirements of Section XI is that the Lender arrange a meeting with the borrower and FmHA to resolve the financial deficiency.

This same issue was addressed by the Fourth Circuit. In *Robbins v. Maryland National Bank,* 762 F.2d 1000 (4th Cir.

---

**4.** The Parkers specifically rely on Section XI of the Lender's Agreement which provides in pertinent part:

*Default by Borrower.*

A. The Lender will notify FmHA when a Borrower is thirty (30) days (90 days for guaranteed rural housing loan) past due on a payment or if the Borrower has not met its responsibilities of providing the required financial statements to the Lender or is otherwise in default. The Lender will notify FmHA of the status of a Borrower's default on Form FmHA 1980–44, "Guaranteed Loan Borrower Default Status." A meeting will be arranged by the Lender with the Borrower and FmHA to resolve the problem. Actions taken by the Lender with written concurrence of FmHA will include but are not limited to the following or any combination thereof:

1. Deferment of principal payments (subject to rights of any Holder(s)).
2. An additional temporary loan by the Lender to bring the account current.
3. Reamortization of or rescheduling of the payments on the loan (subject to rights of any Holder(s)).
4. Transfer and assumption of the loan in accordance with the applicable Subpart of Title 7 CFR Part 1980.
5. Reorganization.
6. Liquidation.
7. Subsequent loan guarantees.
8. Changes in interest rates with FmHA's, Lender's, and the Holder'(s) approval; provided, such interest rate is adjusted proportionally between the guaranteed and unguaranteed portion of the loan and the type of rate remains the same.

1985), plaintiff attempted to sue, as a third party beneficiary, on a clause in the Lender's Agreement requiring the lender to arrange a meeting for the borrower and FmHA. The solution that emerged from that meeting was foreclosure. The Fourth Circuit held that Robbins could not rely on the third party beneficiary status because, pursuant to the terms of the agreement, the meeting was held; and FmHA, which would be the creator of any such third party rights, was also a party and concurred in the decision to foreclose. Similarly, in this case, several meetings were held and a variety of plans were discussed. The Parkers knew that as long as they remain in default and unresponsive to the proffered solutions, liquidation would be the only remedy available to resolve their indebtedness. Furthermore, the Parkers' reluctance to sell their land is insufficient to sustain a due process argument. The Parkers had been in default since 1985 and were on notice that if they did not bring their loan current they would be subject to foreclosure.[5]

### VI.

■ The Parkers contend that they are entitled to have their loans restructured and considered for a "shared appreciation agreement" under 7 U.S.C. § 2005 without filing for bankruptcy. However, the Parkers have misinterpreted the rights available to them. 7 U.S.C. § 2005 specifically provides that:

> Within 3 months after a court of competent jurisdiction confirms a plan of reorganization *under Chapter 12 of Title 11*, for any borrower to whom a lender has made a loan guaranteed under this chapter, the Secretary shall pay the lender an amount estimated by the Secretary to be equal to the loss incurred by the lender for purposes of the guarantee.

7 U.S.C. § 2005(a)(1). The statute conditions loan restructuring on the existence of a confirmed plan of reorganization under Chapter 12. No such reorganization plan exists since the Parkers' bankruptcy case was dismissed; and therefore, they are not eligible for loan restructuring.

### VII.

■ Finally, the Parkers argue that the district court erred by refusing to grant a preliminary injunction. We disagree. In order for a court to issue a preliminary injunction, four factors must be considered: 1) whether the plaintiff has shown a strong or substantial likelihood of success on the merits; 2) whether the plaintiff has shown irreparable injury; 3) whether the issuance of a preliminary injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing a preliminary injunction. *See Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). Absent evidence of abuse of discretion, the district court's decision to issue or deny a request for preliminary injunction will not be overturned. *Otero Sav. & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275 (10th Cir.1981).

■ We find that the Parkers' argument for equitable relief is without merit. Under the terms and conditions of the promissory note and the deed of trust used to secure the loans, the Bank is well within its rights to foreclose on the realty. Moreover, as discussed above, the Parkers have no appeal rights; and therefore, they would not succeed on the merits.

In addition, we agree with the district court's finding that the Parkers have failed to prove irreparable harm or that the public interest would be best served if the injunction was granted. The facts of this case indicate that issuing an injunction would, in fact, cause substantial harm to the Bank.

Several attempts have been made to resolve the Parkers' financial obligations;[6]

---

**5.** The loan was secured by a promissory note and a deed of trust which gave the Bank the right to liquidate the collateral (their farm) by means of foreclosure regardless of the terms of the guarantee contract with the FmHA.

**6.** As required by Section XI of the Lender's Agreement, the Bank arranged three meetings with the Parkers and FmHA to resolve the Parkers' indebtedness. At each meeting Mr. Parker expressed his resistance to foreclosure but never offered an alternative solution.

however, the Parkers have continuously postponed the process [7] and failed to cooperate. The Parkers even rejected a lenient plan recommended by the Bank that would have allowed them to keep their home, their son's residence, 70 acres and would have reduced their debt to $85,000.00. The Parkers have remained in default since 1985 and have made only one attempt to reduce the principal of the loan.[8] The current debt now exceeds the value of the collateral. In light of these facts, we find that the district court did not abuse its discretion by denying the request for a preliminary injunction and properly dissolved the temporary restraining order allowing the Bank to proceed with foreclosure.

Accordingly, for all the foregoing reasons, the order of the Honorable James H. Jarvis, United States District Court, Eastern District of Tennessee, denying the request for a preliminary injunction and dissolving the temporary restraining order is AFFIRMED.

---

**7.** The Parkers successfully delayed foreclosure from May, 1987 until February 1988 by attempting to file for bankruptcy.

**8.** At the direction of the United States Bankruptcy Court, the Parkers voluntarily conducted a private sale of 640 acres of their property. The proceeds of that sale were used to pay off other creditors and a small portion was applied to the loan in question.