**UNITED STATES of America, Plaintiff,**

v.

**Michael D. HEALY, Scott F. Harder and Warren G. Craig, Jr., Defendants.**

**Michael D. HEALY, Third–Party Plaintiff,**

v.

**COUNTRY HILL BANK n/k/a Premier Bank, Third–Party Defendant.**

**Civil Action No. 95–2099–GTV.**

United States District Court,
D. Kansas.

April 25, 1996.

Christina L. Morris, Office of United States Attorney, Kansas City, KS, for United States of America.

Michael D. Doering, Mark W. Untersee & Associates, P.C., Kansas City, MO, for Michael D. Healy.

Scott F. Harder, Overland Park, KS, Pro Se.

T. Bradley Manson, Shapiro & Manson, Overland Park, KS for Warren G. Craig, Jr.

Richard C. Wallace, John E. Larson, Evans & Mullinix, P.A., Lenexa, KS, for Country Hill Bank.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

In this action the United States of America, on behalf of the Small Business Administration, seeks judgment against defendants on the basis of their personal guaranties of a

loan extended by Country Hill Bank to defendants' business, HHC No. 1, Inc. d/b/a El Poco Loco. Defendant Michael D. Healy has filed a third-party complaint against Country Hill Bank n/k/a Premier Bank and cross claims against defendants Scott F. Harder and Warren G. Craig, Jr.

The court has under consideration the motion of plaintiff United States of America for summary judgment against defendants Michael D. Healy, Scott F. Harder, and Warren G. Craig, Jr. (Doc. 44) for the amounts due on the note which was guaranteed by defendants, including interest and a statutory surcharge. Defendants Healy and Craig have responded and oppose the motion.[1] For the reasons set forth below, the motion is granted.

### I. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party

has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### II. Factual Background

The following uncontroverted facts are established in accordance with Fed.R.Civ.P. 56 and D.Kan.R. 56.1.

On October 25, 1990, defendant Michael D. Healy, as president of HHC No. 1, Inc. d/b/a El Poco Loco (hereinafter "HHC"), a Kansas corporation, obtained a loan and signed a promissory note for $100,000.00 payable to Country Hill Bank. The debtor obtained the loan to open a restaurant in Overland Park, Kansas.

The Small Business Association (SBA) also entered into an Authorization and Loan agreement with the Bank and the debtor which guaranteed 90% of the HHC loan. The defendants Michael D. Healy, Scott F. Harder and Warren G. Craig, Jr. individually signed SBA personal guaranties, which unconditionally guaranteed repayment of the $100,000.00 loan to HHC from Country Hill Bank. Defendants Healy, Harder and Craig each owned a one-third interest in HHC.

HHC used a portion of the loan proceeds to purchase equipment and fixtures located at the restaurant's leasehold premises from the previous occupant, a Hardee's franchise. HHC paid the purchase price directly to the owner of the Hardee's franchise. At some point after HHC opened its restaurant, a secured lender of the Hardee's franchisee replevied the equipment and fixtures for nonpayment of a loan by the Hardee's franchi-

---

1. Defendant Scott F. Harder failed to file a timely response to plaintiff's motion. Plaintiff has filed a motion for judgment against defendant Harder pursuant to D.Kan.Rule 7.4 (Doc. 62) which allows the court to consider and decide the motion as an uncontested motion. On April 17, 1996, defendant Harder filed a response to a show cause order issued by Magistrate Judge Rushfelt and an answer to plaintiff's request for judgment. Harder apparently seeks to rely on his co-defendant's responses to the motion for summary judgment. The court will allow this joinder and deny plaintiff's motion under Rule 7.4.

see. The secured lender had a first priority security interest in this collateral. Following the loss of the equipment and fixtures, HHC was forced to close the restaurant.

Country Hill Bank had conducted a lien search on the equipment and fixtures purchased with the loan proceeds under the borrower's name HHC No. 1, Inc. and its trade name, El Poco Loco. The Bank did not search under the third party seller's name and, thus, did not discover the prior lien.

On February 1, 1993, Midland Bank of Lenexa, formerly known as Country Hill Bank, assigned all right, title and interest in the promissory note and the three personal guaranties to the SBA. On September 9, 1994, the SBA sent a letter to each of the defendant guarantors demanding payment of the loan because HHC had defaulted. Defendants Healy, Harder and Craig have not responded to the demand letter with payment.

Plaintiff contends that defendants are jointly and severally liable for the principal and interest remaining on the HHC loan based on their unconditional, personal guaranties. Plaintiff further seeks post-judgment interest under 28 U.S.C. § 1961 and a 10% surcharge allowed under 28 U.S.C. § 3011. Defendants contend that they are not liable under the guaranty agreements because plaintiff, through its agent Country Hill Bank, impaired the value of the collateral securing the note by failing to obtain a first priority lien.

## III. Discussion

### A. Governing Law

■ Federal law governs questions arising under the federal SBA program. *United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843, 845 (10th Cir.1986) (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)). In the absence of specific federal law, however, the court may look to state law "especially in areas such as contract law where concerns of uniformity of law predominate." *United States v. Hunter*, 652 F.Supp. 774, 776 (D.Kan.1986); *see also United States v. Kel-*

*ley*, 890 F.2d 220, 221–22 (10th Cir.1989) (applying Kansas law to enforceability of SBA guaranty); *New Mexico Landscaping*, 785 F.2d at 845 (applying New Mexico law). Because the loan and the guaranty agreements were entered into in the state of Kansas, the court will apply the laws of Kansas to determine whether plaintiff is entitled to enforce the personal guaranties.

■ "A guaranty involves a tripartite relationship based on a contract between two or more persons by which one person promises to answer for the debt of a third person." *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.2d 246, 255, 640 P.2d 343, 350 (1982) (citations omitted). In the case of an unconditional guaranty, the creditor has no duty to proceed against the principal obligor prior to attempting collection from the guarantor. *Id.*

Plaintiff has established the existence of the underlying note, the existence of the three personal guaranties, default of the principal obligor, HHC, and demand for payment from the guarantors. Defendants do not dispute these facts.

Defendants, however, assert the affirmative defense of impairment of collateral in response to plaintiff's request for summary judgment. Defendants contend that plaintiff is not entitled to enforce the guaranties because its agent, Country Hill Bank, failed to obtain a first priority lien on certain equipment and fixtures pledged as security for the loan. Essentially, defendants argue that (1) Country Hill Bank had an affirmative contractual duty to conduct a lien search on the collateral purchased from a third-party seller and to insure that it had a first priority security interest in the collateral; (2) defendants relied on the Bank to perform this duty; (3) the Bank breached this duty by failing to discover a prior lien on the collateral and thereby failing to obtain a first priority interest in the collateral; and that, therefore, (4) defendants are discharged from their guaranties to the extent that the value of the collateral was impaired.

### B. Impairment of Collateral Defense

Defendants appear to be relying on a provision of Article 3 of the Kansas Uniform Commercial Code which provides that

[i]f the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an endorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment.

K.S.A. § 84–3–605(e) (Supp.1995). The previous code version provided that any party to the instrument was discharged to the extent that the holder of the instrument "unjustifiably impair[ed] any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." K.S.A. § 84–3–606(1)(b) (repealed Feb. 1, 1992).

Although the old Code version was silent on the issue of waiver, the new version provides that a party obligated to pay on the instrument is not discharged if

the instrument or a separate agreement of the party provides for waiver of discharge under this section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral.

K.S.A. § 84–3–606(i) (Supp.1995). Plaintiff argues that even if it has unjustifiably impaired the value of the collateral, defendants are not discharged from their obligations under the guaranties because they specifically have waived their rights to object in the guaranty agreements.

The applicability of Article 3 of the Uniform Commercial Code is questionable in this instance. Article 3 only applies to negotiable instruments. The guaranty agreements signed by defendants are separate contracts from HHC's promissory note which is a negotiable instrument. The separate guaranty agreements are not negotiable instruments. *See DeLorean*, 640 P.2d at 351 (UCC does not apply to a separate contract of guaranty because it is not a negotiable instrument). The UCC, however, generally restates the common law rule which provides that impairment of collateral discharges a guarantor's obligation to the extent of the impairment. *Id.*; Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial

Code ¶ 4.03[3][b], n. 128 (rev. ed. 1993) (§ 3–606 is a codification of common law rule of suretyship). Thus, the court concludes that although Article 3 technically does not apply, its provisions are helpful to the extent that they restate the common law rules regarding guaranty agreements. *See Hunter*, 652 F.Supp. at 778.

The court first will turn to defendants' assertion that plaintiff was contractually obligated under the Authorization and Loan agreement ("Loan agreement") to insure that it obtained a first priority security interest in the collateral. In the Loan agreement the SBA agreed to guarantee 90% of the loan made by Country Hill Bank to HHC. The Loan agreement contains several provisions outlining administration of the loan. The agreement provides, in part, that

(3) Terms of the Loan:

. . . . .

(c) *Collateral:*

(1) First Security interest in machinery and equipment, ... furniture, fixtures, inventory and accounts receivable, contract rights, general intangibles, assignment of leasehold improvements now owned or hereafter acquired. Bank to obtain a lien search from both State and County prior to disbursement to assure the security position in the above collateral as listed.

The Loan agreement also provides that its terms are binding on the borrower, HHC.

Defendants contend that the Loan agreement required the bank to complete a lien search on the collateral under the borrower's name and under the names of any third party seller to ensure the bank's first priority status. Defendants assert that although they were not parties to the Loan agreement, they are intended third party beneficiaries of the agreement. Further, defendants contend that they are relieved of their obligations under the guaranties because Country Hill Bank failed to comply with the Loan agreement and obtain a first priority lien on the collateral.

In order for a third party to enforce a contract entered into between two

other parties, the third party must show that the contract was entered into for his benefit. *Cornwell v. Jespersen,* 238 Kan. 110, 115, 708 P.2d 515, 520 (1985). "[A] beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract." *Id.* "Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Id.* at 115–16, 708 P.2d 515. An "incidental beneficiary" cannot enforce a contract as a third party beneficiary. A person is an incidental beneficiary if the benefits accruing to him are merely incidental to the performance of the contract. *Id.*

█ It does not appear that the Loan agreement was written for the benefit of the personal guarantors. The provisions of the Loan agreement outlining the administration of the loan and the duties of the lender and the borrower were for the benefit of the SBA. These requirements reduced the chances that the borrower would default and that the SBA guaranty would be enforced by the Lender. Any benefits that the personal guarantors derived from the Loan agreement were merely incidental. *See United States v. Martin,* 344 F.Supp. 350, 356 (E.D.Mich. 1972) (participation agreement between the bank and the SBA was for their mutual benefit and did not create any rights or duties in the defendants).

█ Next, defendants argue that the guaranties specifically contemplate that Country Hill Bank was subject to the terms and conditions of the Loan agreement. Each of the guaranty agreements contain a provision which states that

[t]he Undersigned [guarantor] hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, *but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force,* to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities ...;

\* \* \* \* \* \*

(c) To forbear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

\* \* \* \* \* \*

(d) To consent to the substitution, exchange, or release of all or any part of the collateral ...;

(emphasis added). Defendants contend that this provision incorporated the Loan agreement into the guarantee contract and required the bank to obtain a first priority security interest in the collateral.

The court is not persuaded that the clause "subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force" incorporates the provisions of the Loan agreement into the guaranty. Nor can the court conclude that the clause creates a duty on the part of the Bank to obtain a first priority security interest for the benefit of the personal guarantors. Further, the provision did not relieve the borrower, HHC, and its principals, defendants Healy, Harder and Craig, of their responsibility as purchasers from conducting their own investigation to determine whether a prior lien encumbered the collateral before advancing the purchase price directly to the seller.

█ Finally, defendants are unable to avoid the waiver clause contained in the guaranty agreements. The guaranties provide, in part, as follows:

The obligations of the Undersigned [guarantor] hereunder, and the rights of the Lender in the collateral, shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender: by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by Lender or later; *nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, Lender; nor by reason of the fact*

*that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way;* nor by reason of the fact that any of the Liabilities may be invalid for any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste, or loss by fire, theft or otherwise of any of the collateral, unless such deterioration, waste or loss be caused by the willful act or willful failure to act of Lender.

(emphasis added). The court finds that defendants waived the impairment of collateral defense. The waiver provision contained in each of the guaranty agreements is clear and unambiguous. *See United States v. Proctor,* 504 F.2d 954, 956–57 (5th Cir.1974) (clear terms of guaranty waived guarantor's right to preservation of collateral where bank failed to perfect its security interest in the collateral); *United States v. Flasher Co. of Tex.,* 460 F.Supp. 231, 233 (S.D.Tex.1977) (SBA's failure to timely file a financing agreement did not relieve guarantor of liability where guarantor waived impairment of collateral defense in SBA guaranty).

Kansas law does not prohibit waiver of the impairment of collateral defense. *Compare DeLorean,* 640 P.2d at 351–52 (guarantor waived the right to object to Bank's failure to foreclose in a timely manner on debtor's secured assets) *and Halpin v. Frankenberger,* 231 Kan. 344, 352, 644 P.2d 452, 453 (1982) (guarantors waived notice of default, payment extensions, and the requirement to retain security furnished by a co-guarantor) *with Kelley,* 890 F.2d at 222–23 (Kansas law prohibits waiver of guarantor's right to challenge the commercial reasonableness of sale of collateral pursuant to K.S.A. 84–9–501(3)(b)). In fact, at least one well-respected commentator recommends that a secured creditor include language in the guaranty by which the guarantor expressly waives any release or impairment of collateral. *See* Barkley Clark, *supra,* ¶ 4.03[3][b]. Clark

suggests that secured creditors include an express waiver such as the following:

> The undersigned guarantor hereby expressly waives (1) surrender, release, exchange, substitution, dealing with or taking any additional collateral, (2) abstaining from taking advantage of or realizing upon any security interest or other guaranty; and (3) any impairment of collateral including, but not limited to, failure to perfect a security interest in the collateral.

*Id.* This example is similar to the waiver language contained in the guaranty agreements at issue in this case. The court concludes that the defendant guarantors have expressly waived their rights in the collateral. Defendants are not released from their obligations under the guaranties due to Country Hill Bank's failure to obtain a first priority security interest in the collateral.

 In addition, defendants had no right to rely on the collateral securing the loan when they signed the guaranty agreements because they specifically waived any rights in the collateral. "[W]hen the rights to the collateral are explicitly waived by the guarantor, there can be no reliance on the collateral as an inducement to enter into the guaranty. Thus, ... the guarantor has agreed to be absolutely liable." *Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 999 (E.D.Penn. 1982) (internal quotation and citation omitted).

The court concludes that plaintiff is entitled to summary judgment on the enforceability of defendants' personal guaranties.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for summary judgment (Doc. 44) is granted. Judgment shall be entered against defendants Healy, Harder and Craig, jointly and severally, in the amount of $97,570.19 as of January 26, 1996, plus interest accrued after January 26, 1996, at a rate of $17.03 per day until the date of the entry of judgment, plus interest after the date of the entry of judgment at the rate set forth in 28 U.S.C. § 1961, plus a 10% surcharge allowed under 28 U.S.C. § 3011.

IT IS FURTHER ORDERED that plaintiff's motion pursuant to D.Kan.Rule 7.4 with

regard to defendant Harder (Doc. 62) is denied as moot.

**IT IS SO ORDERED.**