1998 ME 275

### FLEET BANK OF MAINE

v.

### Gregory A. HARRIMAN et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 20, 1998.

Decided Dec. 23, 1998.

---

Michael S. Haenn, Bangor, for plaintiff.

Gregory A. Harriman, Kathryn P. Harriman, Troy, for defendants.

Jay P. McCloskey, United States Attorney, Frederick C. Emery, Jr ., Asst. U.S. Atty., Portland, for party-in-interest.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1]   Gregory and Kathryn Harriman appeal from a judgment of foreclosure entered in favor of Fleet Bank of Maine after a nonjury trial in the Superior Court (Waldo County, *Marsano, J.*).   On appeal, the Harrimans contend that Fleet was not entitled to foreclose under the terms of its guaranty contract with the federal government.   We affirm the judgment.

[¶ 2]   The Harrimans are dairy farmers who reside in Troy. In 1990, having sold their previous farm, they sought a loan to finance the purchase of the farm in Troy. They initially requested a direct loan from the Farmer's Home Administration (FmHA), now called the Farm Services Agency (FSA), of the United States Department of Agriculture.   FmHA was not making direct loans, so they applied for an FmHA-guaranteed loan from Fleet.   Fleet applied to FmHA for a guaranty, and FmHA issued a Conditional Commitment for Guarantee dated June 12, 1990.   Attached to that document was Schedule A, which stated, in part:

> The lender agrees that, if liquidation of the account becomes imminent, the lender will consider the borrower for an Interest Rate Buydown under Exhibit D of Subpart B of 7 CFR Part 1980, and request a determination of the borrower's eligibility by FmHA. The Lender may not initiate foreclosure action on the loan until 60 calendar days after a determination has been made with respect to the eligibility of the borrower to participate in the Interest Rate Buydown Program.

Fleet and Gregory Harriman signed the Conditional Commitment for Guarantee on June 15, 1990.[1]   On the same day, in consideration of a $155,000 loan from Fleet, the Harrimans executed a promissory note secured by a mortgage on the farm.

[¶ 3]   The Harrimans stipulated at trial that they defaulted on the note and mortgage by failing both to make required payments and to pay real estate taxes on the property. Apparently no effort was made to investigate the Harrimans' eligibility for the Interest Rate Buydown Program (IRBP).   In November 1995 Fleet brought this foreclosure action.

[¶ 4]   The Harrimans resist foreclosure solely on the grounds that Fleet had not considered them for the IRBP as required by the guaranty contract.   They contend that they were parties to the contract.   The trial court found, and we agree, that the contract is unambiguous.   Its interpretation, therefore, is a question of law.   *See F.O. Bailey*

---

the tower, we do not address the access road issue.   Access to the tower is an issue, in addition to the Federal Telecommunications Act, that should be addressed by the Planning Board on remand.

1.   Gregory Harriman actually signed in two places: his signature appears immediately below that of the Bank, but there is a footnote on his signature line, on the printed form, which states that the signature is not required "in B & I and RH–MF cases."   That refers to Business & Industry and Rural Home–Multi-Family.   This was a farm loan, and therefore Harriman's signature was not required.   His signature also appears on Schedule A under the Addendum for Highly Erodible Land and Wetland Conservation.

*Co. v. Ledgewood, Inc.,* 603 A.2d 466, 468 (Me.1992).

[¶ 5] The Harrimans were not parties to the guaranty contract; it was solely between FmHA and Fleet. We have held that "[t]he undertaking of a guarantor is his own separate and independent contract, distinct from the principal debtor." *Casco Northern Bank v. Moore,* 583 A.2d 697, 699 (Me.1990) (citing *International Harvester Co. v. Fleming,* 109 Me. 104, 108, 82 A. 843, 845 (1912)); *see also Top Line Distribs., Inc. v. Spickler,* 525 A.2d 1039, 1040 (Me.1987) ("A guaranty contract is an undertaking collateral to a principal obligation and binds only those who are parties to the guaranty contract itself."). At least two federal courts interpreting guaranty contracts for FmHA-guaranteed private loans similar to the one here have concluded that the borrowers were not parties to the guaranty. *See Parker v. United States Dep't of Agric.,* 879 F.2d 1362, 1364 (6th Cir.1989); *Schuerman v. United States,* 30 Fed. Cl. 420, 426 (1994).[2] In light of these precedents, the language of the guaranty contract in this case, and the very nature of a guaranty contract, the trial court did not err in its conclusion that the Harrimans were not parties to the guaranty.

[¶ 6] The Harrimans also argue that they are third-party beneficiaries of the guaranty contract. In determining whether a party is entitled to enforce a contract as a third-party beneficiary we have utilized the definition of "intended beneficiary" in the Restatement:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981), *quoted in F.O. Bailey,* 603 A.2d at 468.

[¶ 7] This means the Harrimans must demonstrate that in order to effectuate the intention of Fleet and FmHA, it is appropriate to recognize that the Harrimans have a right to performance and the circumstances indicate that FmHA, as the promisee, intended to give the Harrimans the benefits of the promised performance. The "promised performance" at issue here is the promise of forebearance by Fleet of foreclosure for a period of 60 days while the eligibility of the Harrimans for the IRBP is determined. The intention of FmHA is ascertained from the written instrument and the circumstances under which it was executed. *See F.O. Bailey,* 603 A.2d at 468. The Harrimans must show more than that they benefitted from the contract; they must show that FmHA had a "clear and definite" "intent that they receive an enforceable benefit under the contract[ ]." *Id.* We have explained:

In assessing the relevant circumstances, courts must be careful to distinguish between the consequences to a third party of a contract breach and the intent of a promisee to give a third party who might be affected by that contract breach the right to enforce performance under the contract. If consequences become the focus of the analysis, the distinction between an incidental beneficiary and an intended beneficiary becomes obscured. Instead, the focus must be on the nature of the contract itself to determine if the contract necessarily implies an intent on the part of the promisee to give an enforceable benefit to a third party.

*Devine v. Roche Biomedical Labs.,* 659 A.2d 868, 870 (Me.1995).

[¶ 8] The record contains no evidence about the intent of either Fleet or FmHA. Indeed, the federal regulations supply the terms of the guaranty contract. *See* 7 C.F.R. §§ 1980.6, 1980.61, part 1980, subpart A, apps. E, F, subpart B, exh. D(II), (XVI-II)(G) (1998); *see also* 7 U.S.C.A. § 1999(g)

---

**2.** In *Parker* the borrowers did not sign the guaranty. *See* 879 F.2d at 1364. In *Schuerman* the borrowers reviewed the guaranty and agreed to accept its terms. *See* 30 Fed.Cl. at 423.

(1988) (every contract of guaranty on a farm loan shall contain a condition that the lender may not initiate foreclosure until 60 days after a determination of whether the borrower is eligible for the interest rate reduction). Neither FmHA nor Fleet could deviate from those terms, and therefore, to an extent, the intention of the parties is substituted by the legislative and regulatory intentions. It was the intention of Congress and the Department of Agriculture to assist family farms by providing incentives to banks to loan money for family farms and by providing mechanisms to assist farmers in meeting those loan obligations. *See* 7 U.S.C.A. § 1998 (1988).

[¶ 9] The Harrimans were beneficiaries of the guaranty because it allowed them to get a loan they could not have otherwise obtained. They were also beneficiaries of the foreclosure forebearance condition because they would have benefitted, if only by delaying the inevitable, had Fleet requested from FmHA a determination of their eligibility for the IRBP before commencing foreclosure. There is, however, no indication that either FmHA or Fleet had a "clear and definite" intent to give the Harrimans an enforceable benefit. *F.O. Bailey*, 603 A.2d at 468. In fact, had Congress intended to give borrowers a mechanism to enforce the condition it could have given them a cause of action, but it has not done so. The terms of the guaranty prevent FmHA from paying on its guaranty when the forebearance condition is breached by the bank, but it does not "necessarily impl[y] an intent on the part of the promisee to give an enforceable benefit to a third party." *Devine*, 659 A.2d at 870. A breach by Fleet could give FmHA or its successor a defense to an action by Fleet to enforce the guaranty, but it gives the Harrimans no defense to the foreclosure.

[¶ 10] That conclusion is consistent with the holdings of other courts that have found that borrowers are not intended third-party beneficiaries of federally-guaranteed private loans. *See Parker v. United States Dep't of Agric.*, 879 F.2d 1362, 1366 (6th Cir.1989) (FmHA-guaranteed loan); *United States v. Healy*, 923 F.Supp. 1424, 1428–29 (D.Kan. 1996) (loan guaranteed by Small Business Administration); *United States v. Martin*, 344 F.Supp. 350, 356 (E.D.Mich.1972) (SBA-guaranteed loan); *Alder v. First Nat'l Bank & Trust*, 241 Neb. 873, 491 N.W.2d 686, 689 (Neb.1992) (SBA-guaranteed loan). In a case interpreting the same Conditional Commitment for Guarantee involved in this case, the Court of Federal Claims came to the opposite conclusion and held that the borrowers were entitled to enforce the conditions in the contract between FmHA and the Bank. *See Schuerman v. United States*, 30 Fed.Cl. 420, 427–433 (1994). To reach that conclusion, the *Schuerman* court abandoned its precedents and held that a third-party beneficiary can enforce performance if the parties intended the contract to benefit him, whether or not they intended to give him an enforceable right to that benefit.[3] *See id.* That holding is directly contrary to the legal standard enunciated by this Court in *Devine* and *F.O. Bailey*, and we decline to adopt it in this case.

The entry is

Judgment affirmed.

---

**3.** The new test announced in *Schuerman* for third-party beneficiaries has been rejected by the Federal District Court for the District of Maine.

*See Hodgdon v. United States*, 919 F.Supp. 37, 40 (D.Me.1996).