**NET 2 PRESS, INC., Plaintiff**

v.

**58 DIX AVENUE CORPORATION, et al., Defendants**

No. 02–18–P–C.

United States District Court, D. Maine.

Jan. 31, 2003.

Richard L. O'Meara, Barbara L. Goodwin, Murray, Plumb & Murray, Portland, ME, Eric M. Mehnert, Mehnert Law Offices, Bangor, ME, for Net 2 Press Incorporated, plaintiff.

Jeffrey M. White, William D. Hewitt, Pierce, Atwood, Portland, ME, Benjamin R. Pratt, Jr., Bartlett, Pontiff, Stewart & Rhodes, Glens Falls, NY, for 58 Dix Avenue Corporation, James Bowen, III, defendants.

## AMENDED ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge filed with the Court on December 10, 2002, with copies to counsel, his Recommended Decision on Defendants' Motion for Partial Summary Judgment (Docket Item No. 47).[1] Defendants filed their objection thereto on December 27, 2002 (Docket Item No. 51), to which objection Plaintiff filed its response on January 16, 2003 (Docket Item No. 55). Plaintiff filed its objection to the Recommended Decision on December 27, 2002 (Docket Item No. 52), to which objection Defendant filed its response on January 16, 2003 (Docket Item No. 54).

This Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, it is **ORDERED** as follows:

(1) Plaintiff's objection is hereby **DENIED**;

(2) Defendants' objection is hereby **DENIED**;

(3) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(4) Defendants' motion for partial summary judgment is hereby **GRANTED** with respect to any claims based on oral representations made before the execution of the Asset Purchase Agreement; any claims based on oral representations made after the execution of the Asset Purchase Agreement that amend or modify any term of that Agreement and were not reduced to writing; Counts III, IV, VIII, IX, XII, XIII, and XV of the amended complaint; and it is otherwise **DENIED**.

## *MEMORANDUM DECISION ON DEFENDANTS' MOTION TO STRIKE AND RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

COHEN, United States Magistrate Judge.

The defendants, 58 Dix Avenue Corporation ("Dix") and James Bowen, III, move to strike portions of the declaration of Garth Grandchamp filed in support of the plaintiff's opposition to their motion for partial summary judgment, and for summary judgment on all claims asserted by the plaintiff that are based on written or oral statements extrinsic to the written asset purchase ("APA") agreement between the plaintiff and Dix's predecessor in title, on claims seeking the replacement cost of a certain machine, on claims concerning the condition of the plant that was among the subjects of the APA, on claims based on the "work in process" calculation made in connection with the closing of the transaction at issue, and on the claim for

---

1. The Court notes that the Magistrate Judge also acted to deny the Defendants' Motion to Strike Portions of Declaration of Garth Grandchamp (Docket Item No. 33), a nondispositive action subject to review by this Court on appeal pursuant to 28 U.S.C. § 636(b)(1)(A). Neither party has filed any notice of appeal from that action (or otherwise initiated any challenge thereto in the written objections to the Recommended Decision). Because of the absence of such a notice of appeal, the Court has not undertaken any review of the denial of the Motion to Strike. *Jacobsen v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.,* 594 F.Supp. 583, 585 (D.Me.1984).

slander of title. I grant the motion to strike in part and deny it in part. I recommend that the court grant the motion for partial summary judgment in part.

## I. The Motion to Strike

Among the documents filed by the plaintiff in support of its opposition to the motion for partial summary judgment is the Declaration of Garth E. Grandchamp ("Garth Decl.") (filed with Plaintiff's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 29)), a 43–paragraph statement made under penalties of perjury. The defendants have moved to strike all or portions of 24 of those paragraphs on the grounds that the affected statements contradict deposition testimony given by Garth Grandchamp, contain hearsay, are conclusory, lack foundation, are not based on personal knowledge or are otherwise inadmissible. Defendant's [sic] Motion to Strike Portions of Declaration of Garth Grandchamp ("Motion to Strike") (Docket No. 33) at 1 & Attachment A.

Fed.R.Civ.P. 56(e) requires that affidavits submitted in connection with a motion for summary judgment "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein."

When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994). "[L]apse of memory, new sources of information or other events can often explain a revision of testimony." *Hernandez–Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir.2000). "Vague and conclusory statements in an affidavit do not meet the specificity requirements of Federal Rule 56." *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir.1988); *see also Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D.Mass.1997). Additional information may be provided by an affidavit submitted in opposition to a motion for summary judgment so long as the affiant did not testify at deposition that no such additional information existed. *Elwell v. Conair, Inc.*, 145 F.Supp.2d 79, 85 (D.Me.2001).

In a supplemental declaration submitted with the plaintiff's opposition to the motion to strike, Grandchamp states:

Since my depositions I have personally reviewed over 6,000 pages of documentary evidence, attended Mr. Bowen's deposition, spoken with Mr. Kevin King and Shareholders [sic] of Net 2 Press and read every deposition that has been taken in the course of the litigation. As a result, my memory of the events at issue at the time I gave my Declaration in October was clearer than it had been at the time of my deposition in May and July.

Supplemental Declaration of Garth E. Grandchamp ("Garth Supp. Decl.") (Docket No. 41) ¶ 6.

### A. Alleged Contradictions

The defendants contend that portions of the following paragraphs of Grandchamp's initial declaration contradict his earlier deposition testimony: 12, 21, 22, 23, 25, 32. Motion to Strike, Attachment A ("Att.A") at 3, 11–17, 20. With respect to paragraph 12, the defendants challenge the following statement:

Mr. King told me that he represented the seller in this transaction. I asked him if he could serve as a dual agent, representing both N2P and the Seller.

He said that neither he nor his company believed it was possible simultaneously to represent both buyer and seller. Since he already was representing the seller, he could not represent N2P. Garth Decl. ¶ 12. The defendants base their challenge on the assertion that "Grandchamp testified that King did not represent Coneco with respect to the financial analysis King performed at N2P's request." Att. A at 3. The latter statement does not contradict the first. It provides no reason to strike the quoted portion of paragraph 12.

■ The defendants challenge all of paragraph 21 of the declaration, but their opposition can fairly be characterized only to assert that one statement included in that paragraph is contradicted by Grandchamp's deposition testimony – specifically, the final sentence of the paragraph: "We were unable to reach an agreement that day prior to leaving New York." Garth Decl. ¶ 21. The defendants state that "[a]lthough Grandchamp's Declaration states that the second meeting in Glens Falls ended in impasse ... Grandchamp testified at deposition that the second meeting at Coneco resulted in successful negotiation of the terms of the purchase and sale." Att. A at 11. Grandchamp did testify at his deposition that "we negotiated essentially the terms under which we were going to make the purchase and sales agreement" during the second meeting at Glens Falls. Deposition of Garth E. Grandchamp ("Garth Dep.") (filed with Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment ("Defendants' SMF") (Docket No. 26)) at 127. Grandchamp provides a satisfactory explanation for this change in his supplemental declaration, both in the paragraph quoted above setting forth the activities he undertook after his deposition that refreshed his recollec-

tion and in a paragraph directed specifically at this issue, where he states that the declaration of Kevin King and his discussions with shareholders and Mark Grandchamp, who was present during the initial negotiations, "refreshed my recollection that we did not reach an agreement on the purchase price when we were in New York." Garth Supp. Decl. ¶ 8. Nothing further is required under *Colantuoni*. While Grandchamp may be questioned about this inconsistency if and when he testifies at trial, this sentence in paragraph 21 will not be stricken.

The defendants make essentially the same argument with respect to the first four and the seventh sentences of paragraph 22 of the initial declaration; it fails for the same reasons. They also contend that the sixth sentence of that paragraph contradicts Grandchamp's deposition testimony. Att. A at 15. However, the deposition testimony cited by the defendants does not contradict the statement in the declaration.

■ The defendants challenge the assertion in the final sentence of paragraph 23 of the initial declaration that Grandchamp based his instruction to the plaintiff's attorney in part "on the unqualified representations made in the offering brochure," Garth. Decl. ¶ 23, citing Grandchamp's deposition testimony that "he knew the pro forma financial information in the Sales Brochure needed adjustment," Att. A at 16–17. This is not contradictory information; Grandchamp could have known that the information needed adjustment but nonetheless decided to rely on it. His knowledge did not make the representations in the brochure any less unqualified.

The defendants' objection to the fourth and fifth sentences of paragraph 25 of the initial declaration is based on the same alleged contradiction as is their objection

to the portion of paragraph 21 discussed above and is rejected for the same reasons.

■ With respect to paragraph 32 of the initial declaration, the defendants contend that the assertion in the initial declaration that the appraisal received from Coneco was the source of difficulty for the plaintiff with its bank is contradicted by Grandchamp's deposition testimony that the sales brochure (or offering memorandum) caused this difficulty. Att. A at 20–21. However, the deposition testimony quoted by the defendants refers to both the brochure and the appraisal and can fairly be construed to blame both for the asserted problems with the bank. Garth Dep. at 16–17; *see also id.* at 369–76. There is no contradiction between the declaration and the deposition testimony.

## B. Lapse of Memory

■ The defendants seek to strike all or portions of the following paragraphs of the initial declaration because Grandchamp testified at deposition that he did not remember factual details later set forth in the declaration: 10, 11, 12, 15, 16, 18, 20, 21, 22, 23, 25, 27, 28 and 31. Att. A at 1–9, 11–20. A careful review of the deposition testimony quoted by the defendants in each instance reveals that Grandchamp did not testify in a manner that precludes him from offering the additional information in his declaration. *Hernandez–Loring,* 233 F.3d at 54.

## C. Hearsay

■ The defendants assert that statements included in the following paragraphs of the initial declaration constitute inadmissible hearsay: 19, 24, 31, 32, 36, 39, 41 and 43. Att. A at 9–10, 17, 19–25. In paragraph 19, the following statements are challenged:

> Mr. King said that he would prepare a valuation using the numbers from the offering brochure to justify the asking price, and my understanding was that he did so. He and I later met in Portland, at which time he explained why he believed this to be an excellent deal for N2P. He told me his valuation of Coneco suggested a value of between $4.5 million and $6 million.

*Id.* at 9–10. The plaintiff responds that King's reported statements are admissions because he was at all relevant times an agent of the defendant, that the statements are not offered for the truth of the matter asserted but for Grandchamp's "belief as to the derivation of the valuation he received," and that "the unchallenged King Declaration describes the information King used to perform the valuation." Plaintiff's Objection to Defendants' Motion to Strike Portions of Declaration of Garth Grandchamp, etc. (Docket No. 40), Exhibit A ("Exh.A") at 5–6. The fact that another source in the summary judgment record may provide the same information as that included in hearsay in a particular affidavit does not overcome a hearsay objection to the assertions in the affidavit. The sentences of the declaration at issue cannot fairly be read to be presented only as a statement of the declarant's belief and the basis for that belief; they appear to be offered for their truth. King does appear from the record to have been acting as the defendants' agent at the time the alleged statements were made, Declaration of Kevin A. King (submitted with Plaintiff's Responsive SMF) ¶¶ 8, 11,[1] and the state-

---

**1.** In their reply memorandum, the defendants contend that the plaintiff "cannot claim reliance upon any agency relationship between Coneco and King" because it has not shown that it contacted Coneco to inquire whether King was Coneco's agent or that a contract establishing an agency relationship between King and Coneco existed, citing a New York

ments may fairly be characterized as admissions. Accordingly, they are not hearsay, Fed.R.Evid. 801(d)(2); *see Weston–Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 66–67 (1st Cir.2002).

The defendants object to the following statements in paragraph 24 of the initial declaration:

> Although N2P was able to obtain the necessary extensions from Coneco, we were forced to make significant concessions in exchange for the extensions, despite Mr. King's assurance. For example, Mr. Bowen required the deposit to be made non-refundable and released to him, along with other concessions, in order for N2P to obtain the June extension.

Att. A at 17. The defendants contend that these statements "purport to state the content of written documents and therefore violate the best evidence rule, F.R. Evid. 1002, and are inadmissible hearsay." *Id.* Nothing on the face of the statements suggests that Grandchamp is referring to the content of any written document. Nor do the statements suggest that Grandchamp is attempting to "prove the content" of any document, which is the subject matter of F.R. Evid. 1002. On the basis of the objection as presented, the statements should not be stricken.

The defendants make a similar objection to the following sentence in paragraph 31 of the initial declaration: "I subsequently discovered, however, that the machinery and equipment appraisal over-stated the number of presses in the plant, and that as a result the appraisal overstated the value of Coneco's machinery and equipment by over $500,000." Att. A at 20. Contrary to the defendants' argument, this statement is not and cannot be an attempt to "prove the content" of the appraisals; it is rather an assertion that Grandchamp believed that content to be wrong. The defendants do not specify any other basis for a hearsay objection to this statement. It will not be stricken.

In the same paragraph, the defendants also raise a hearsay objection to the following sentence: "N2P's attorney addressed this misrepresentation with Coneco's counsel, and Coneco admitted the error." *Id.* The plaintiff responds that Grandchamp had personal knowledge of this information because he "received a carbon copy of the letter in which N2P's counsel raised this issue with Coneco's counsel," and "Bowen sent a fax to Grandchamp pointing out the letter between the attorneys, and admitting to the mistake he had made." Exh. A at 13. The evidence in the summary judgment record establishes that Grandchamp did have personal knowledge of the defendant's admission that it had made such an error. Deposition of James L. Bowen, III (Vol.I) (filed with Plaintiff's Responsive SMF) at 161. However, Grandchamp cannot establish personal knowledge of the first assertion in the subject sentence merely by the fact that he received a copy of correspondence purporting to be between other individu-

---

case involving apparent authority. Defendants' Reply Memorandum in Support of Motion to Strike Portions of Declaration of Garth Grandchamp (Docket No. 43) at 6. For purposes of Fed.R.Evid. 801(d)(2), however, the question is not whether the plaintiff reasonably relied on King as an agent of the defendants, which is the gravamen of the doctrine of apparent authority, *see. e.g., Peoples Heritage Sav. Bank v. Pease*, 797 A.2d 1270, 1275–

76 (Me.2002); *Indosuez Int'l Fin. B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 746 N.Y.S.2d 631, 774 N.E.2d 696, 700–01 (2002), but whether King was acting as the agent of the defendants when he made the statements at issue. King's affidavit establishes actual agency in this context. The defendants have not presented any evidence to dispute King's affidavit on this point.

als. A statement based on hearsay is itself hearsay. *See generally Mitchell v. Dooley Bros., Inc.*, 286 F.2d 40, 41–42 (1st Cir. 1960) (copy of unauthenticated letter is hearsay). That portion of paragraph 31 will be stricken.

[14] With respect to paragraph 32 of the initial declaration, the defendants attack the statement that "N2P lost credibility with the bank," Garth Decl. ¶ 32, contending that "the reasons for the bank's desire to have appraisals performed are either inadmissible speculation as to the bank's actions, or are inadmissible hearsay based on statements by the bank to the witness," Att. A at 21–22. The challenged paragraph cannot reasonably be read to state any reasons for the bank's desire to have its own appraisals performed; rather, it merely states that the bank "now wanted its own appraisals." Garth Decl. ¶ 32. The statement regarding the plaintiff's credibility is not necessarily based on "statements by the bank" and thus does not constitute hearsay on its face. The defendants cite no authority to support their assertion that "speculation as to the bank's actions" is inadmissible. In any event, Grandchamp's statement is one of opinion, the basis for which is established by the surrounding information provided in the declaration. Accordingly, while the weight to be given the assertion may be challenged at trial, it is not inadmissible speculation.

■■■ The defendants next challenge the following sentence in paragraph 36 of the initial declaration: "Mr. Dorr confirmed that their calculations were 30% too high and would not reconcile with the profit and loss statements Coneco had presented to N2P." Att. A at 22. The defendants assert that this statement violates F.R. Evid. 1002, *id.*, although there is no suggestion that the content of any document is involved. With respect to the general hearsay objection, the plaintiff responds that the statement "is not offered for its truth, but for its effect on the listeners," and that "the 30% inflation of the WIP is established in Grandchamp's deposition testimony." Again, the fact that a hearsay statement may be established elsewhere in the record by evidence that is not hearsay does not insulate the hearsay statement; it is still inadmissible. The plaintiff's characterization of the statement as being offered only for its effect on the listeners is not supported by the context in which the statement appears; it is clearly offered for its truth. It will therefore be stricken.

The defendants challenge all of paragraph 39 in the initial declaration on the ground that "[a]t deposition, Grandchamp testified that he learned about the WIP through a N2P employee, and therefore his assertions in the Declaration are inadmissible hearsay." Att. A at 22. The deposition testimony quoted by the defendants, however, does not concern the manner in which Grandchamp learned about Bowen's treatment of the WIP figures. Accordingly, the only basis for the hearsay objection raised by the defendants is not substantiated. In addition, the paragraph does not appear on its face to present hearsay. This paragraph will not be stricken as hearsay.[2]

■■■ The defendants contend that the following portion of a sentence in para-

---

2. Here again, the plaintiff makes the ineffectual argument that "the statement at issue is undisputed" because Bowen admitted the substance of the statement somewhere else in the record. Exh. A at 15. A statement is not absolved of its nature as hearsay because the matter asserted could have been presented otherwise in a manner that does not involve hearsay, or even if the matter asserted actually appears elsewhere in the record in a manner that does not involve hearsay.

graph 41 of the initial declaration must be stricken because it is based on hearsay: "I became aware that Mueller Martini was discontinuing making replacement parts for the machine because of its obsolescence." Att. A at 23. The statement does not present hearsay on its face; the defendants apparently mean to suggest that Grandchamp could only have learned this information from someone else. That fact alone, however, does not make the statement hearsay. The statement as presented is Grandchamp's own, not that of someone else offered for its truth.

The defendants challenge all of paragraph 43 of the initial declaration based on the first sentence of that paragraph, which provides: "The Coneco financial statements that eventually were disclosed and appended as Exhibit B to the APA contain inflated values of certain capital assets that are contradicted by documents in Mr. Bowen's files." *Id.* at 25. They contend that, because the documents in Bowen's files are unidentified and not in the record, "any statement by Grandchamp as to what those documents say is hearsay and any conclusions he draws based upon information purportedly in those unidentified documents is conclusory and violates the best evidence rule." *Id.* It must first be noted that the reference to the unidentified documents may be removed from the paragraph without rendering the remainder of the paragraph invalid; the defendants' assumption to the contrary is not supported by the language of the paragraph itself. Next, the sentence does not purport to present what the unidentified documents themselves say, so F.R. Evid. 1002, which the defendants re-

fer to as the "best evidence rule," is not implicated. The reference to unidentified documents in the statement certainly deprives it of much if not most of its evidentiary weight, but it does not transform the statement itself into hearsay.[3] The paragraph will not be stricken.

## D. Other Grounds

The defendants challenge all or portions of the following paragraphs of the initial Grandchamp declaration on grounds not discussed above: 16, 19, 26, 30, 41–43. With respect to paragraph 16, the defendants essentially dispute Grandchamp's characterization of his tour of the plant in the first four sentences of this paragraph. The objection provides:

> Grandchamp's asserted failure to inspect the equipment in detail had nothing to do with any alleged charade as he states in his Declaration. He testified at deposition that in his mind the purpose of the plant tour was to get an overall look at the plant, "not to do specifics."

Att. A at 5. The fact that the defendants dispute the import of a declarant's statement does not provide grounds for striking that statement from the record. The defendants do not point to any contradiction between this statement and Grandchamp's deposition testimony. The defendants have presented no basis on which the court could strike the first four sentences of this paragraph. The defendants challenge the remainder of the paragraph because "Grandchamp did not testify [at deposition] about any statements by Bowen concerning presses purchased in Europe." *Id.* at 6. The subject sentences present

3. The plaintiff's entire response to the defendants' objection to this paragraph is a statement that the records at issue are in fact in the record, identifying them as exhibits to Bowen's deposition. Exh. A at 16. This attempt to supplement the initial declaration comes too late. The record evidence on which a party opposing summary judgment relies must be specific; it was fully within the plaintiff's power to make this reference specific when it submitted the declaration.

such statements by Bowen. Significantly, the portions of Grandchamp's deposition testimony quoted by the defendants in support of this objection do not include any assertion by Grandchamp that Bowen made no such statements. As already discussed, an affiant may add to his deposition testimony at the time of summary judgment under these circumstances. This paragraph will not be stricken.

■ With respect to paragraph 19, the defendants assert that "there is lack of foundation as to Grandchamp's personal knowledge as to what information King used to create the valuation." *Id.* at 10. However, the statement at issue does not require Grandchamp to have such personal knowledge. The statement at issue provides "Mr. King said that he would prepare a valuation using the numbers from the offering brochure to justify the asking price, and my understanding was that he did so." *Id.* at 9–10. The statement merely reports the statement of another individual and Grandchamp's understanding. As discussed previously, King's reported statement is the possible admission of a party for which he acted as an agent; Grandchamp needs no personal knowledge concerning whether King actually did what he said he would do in order to be allowed to report that statement of intent. Grandchamp's understanding may have been wrong; the defendants are entitled to present evidence to that effect. There is no problem with the foundation for Grandchamp's statement. The defendants are not entitled to have the statement stricken on this basis.

■ The defendants seek to strike all of paragraph 26 of the initial declaration on the ground that it lacks foundation as to Grandchamp's personal knowledge of the matters asserted. *Id.* at 18. It is not immediately apparent from the language of the paragraph itself that Grandchamp did not, or could not, have such personal knowledge. Grandchamp's supplemental declaration establishes that he did in fact have sufficient personal knowledge of the matters asserted, Garth Supp. Decl. ¶ 11, to allow the paragraph to overcome this challenge.

■ With respect to paragraph 30, the defendants' objection is again to the import of the statements rather than to their admissibility. Att. A at 19. To the extent that the objection may reasonably be interpreted to be based on an assertion that the statements contradict Grandchamp's deposition testimony, the deposition testimony quoted by the defendants in support of their objection does not demonstrate any contradiction. To the extent that the objection may reasonably be interpreted to suggest that the statements should be stricken because Grandchamp testified earlier that he did not know some of the facts asserted in the declaration, I have already noted that lapses of memory at deposition go only to the weight of subsequent testimony concerning the facts at issue, not to its admissibility.

■ In addition to their hearsay objection to a portion of paragraph 41 in the initial declaration that is discussed above, the defendants seek to strike the last sentence of that paragraph on the grounds that it is contradicted by the deposition testimony of another witness. *Id.* at 23. Without more, this can never be grounds for striking testimony. Particularly in the context of summary judgment, where the existence of disputes of material fact dictates the outcome, a party certainly cannot be heard to argue that conflicting testimony may not be considered merely because it is conflicting.

■ Finally, the defendants seek to strike paragraphs 42 and 43 of the initial declaration on the ground of an asserted

discovery violation. These paragraphs discuss damages sought by the plaintiff on its slander-of-title claim and for alleged misrepresentations in Exhibit B to the purchase and sale agreement between the parties (the "APA"). The defendants assert that no such damages are claimed in the plaintiff's responses to their interrogatories or in its expert disclosures and that as a result these paragraphs must be stricken. *Id* at 25. Paragraph 42 deals with the plaintiff's claim for slander of title, set forth in Count XV of the amended complaint. Plaintiff's First Amended Complaint, etc. (Docket No. 13) ¶¶ 150–60. Paragraph 43 deals with damages resulting from alleged misrepresentations in Exhibit B to the APA. The plaintiff does not address this argument with respect to paragraph 43. Exh. A at 16–17.

The defendants' motion for partial summary judgment, in opposition to which Grandchamp's initial declaration was filed, seeks summary judgment on Count XV on the ground that the plaintiff has not claimed any damages for slander of title. Defendants' Motion for Partial Summary Judgment, etc. ("Summary Judgment Motion") (Docket No. 25) at 23. In the plaintiff's initial disclosure, served pursuant to Fed.R.Civ.P. 26(a)(1), the plaintiff stated that its expert witness "will be calculating . . . damages caused by the slander of title to equipment transferred to N2P." Plaintiff Net 2 Press's Initial Disclosure (Exh. 6 to Defendants' SMF) at 6. However, its disclosures of expert testimony do not include any calculation of damages related to this claim. Plaintiff Net 2 Press's Disclosures of Expert Testimony (filed with Defendants' SMF). In addition, the defendants served an interrogatory that requested extensive detail about each item of damage claimed for each count in the complaint; the plaintiff's response cannot be read to include the information presented in paragraph 42 of Grandchamp's initial declaration. Supplemental Answer to Interrogatory Number 3 (filed with Defendants' SMF). The discovery deadline in this action was September 23, 2002. Report of Hearing and Order re: Discovery Dispute (Docket No. 22). Grandchamp's initial declaration is dated October 23, 2002 and was filed with this court on that date.

The plaintiff begins its opposition to the motion to strike paragraph 42 with the observation that "Grandchamp was never asked at deposition about the slander of title claim." Exh. A at 16. The defendants were under no obligation to question Grandchamp about this claim at deposition; their failure to do so does not negate the plaintiff's failure to provide timely discovery about the damages it claimed on this count. The plaintiff next argues that a failure to provide a calculation of "exact" damages associated with this claim in its initial disclosure "does not justify a request to strike this statement from the Declaration." *Id.* This is not an accurate presentation of the defendants' argument. Similarly, the plaintiff states that "[t]he slander of title claim has been in this case all along, and Defendants cannot claim to be surprised by it," *id.*, but that is not the defendants' claim. Were it sufficient to state a claim in a complaint in order to reach trial, discovery and the rules that govern discovery would be unnecessary. The plaintiff also suggests that "Defendants have other avenues available to them if they believe that a discovery violation occurred." *Id.* That may well be true, but it does not mean that the defendants may not seek the relief that they seek in this motion. The plaintiff does not and cannot suggest that any such "other avenues" necessarily exclude the relief sought here. Finally, the plaintiff asserts that the defendants have not objected to this paragraph "on any grounds that would support a

Motion to Strike." *Id.* It provides no citation to authority to support this assertion nor any list, comprehensive or otherwise, of the grounds on which a motion to strike may be granted. I am aware of no such exclusive list.

If the claim of slander of title in this case were to proceed to trial, this court would not allow it to go to the jury because of the lack of evidence of any damages associated with the claim. This failure by the plaintiff is not remedied by the last-minute statement in the Grandchamp declaration, made only after the defendants had pointed out the plaintiff's failure to respond to its interrogatory on this point or otherwise to produce evidence of such damages. While supplementation of interrogatory answers may be allowed under some circumstances, it should not be allowed after the filing of dispositive motions and on the eve of trial in the absence of extraordinary circumstances, which are clearly not present here. It makes no sense, then, to allow the plaintiff to avoid summary judgment by placing the necessary information in an affidavit submitted in opposition to the defendants' motion for summary judgment on this claim. Paragraph 42 is stricken.

The defendants attack paragraph 43 on a similar basis, asserting that "N2P has never claimed any damages during discovery based on any alleged misrepresentations in Exhibit B to the APA." Att. A at 25. Examination of the same documents reviewed in connection with paragraph 42 supports this assertion. In the absence of any response by the plaintiff on this point, paragraph 43 will be stricken for the same reasons.

## II. The Motion for Partial Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genu-ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

### B. Factual Background

The following undisputed material facts are adequately supported in the parties'

respective statements of material facts, as modified pursuant to my ruling on the plaintiff's motion to strike.

Defendant Dix, formerly Coneco Laser Graphics, Inc. d/b/a Coneco Litho Graphics ("Coneco"), is a New York Corporation. Defendants' SMF ¶ 1; Plaintiff's Responsive SMF ¶ 1. Defendant Bowen is a resident of New York and was at all relevant times president of Coneco. *Id.* ¶ 2. Bowen joined Coneco in 1992. *Id.* ¶ 3. Before 1992, Coneco had consistently lost money since its inception in 1986. *Id.* From 1995 through 1999 Coneco showed a profit. *Id.* ¶ 4.

In mid–1999 Coneco retained Country Business Services, LLC ("CBS") to act as a business broker for the sale of Coneco's business assets. *Id.* ¶ 5. Kevin King, a business broker with an office in South Portland, Maine, became aware in the fall of 1999 that the plaintiff was seeking to acquire a printing company. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF at pp. 15–23) ¶ 48; Defendants' Reply Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 31) ¶ 48. In January 2000 he made contact with Donald Caldera of CBS in Lake Placid, New York, concerning CBS's listing of a printing company (Coneco) that was for sale. *Id.* King arranged a meeting with Garth Grandchamp, president of the plaintiff, in Portland to provide him with a copy of a data sheet that King had received from Caldera. *Id.* ¶ 49; De-

fendant's SMF ¶ 7; Plaintiff's Responsive SMF ¶ 7. King also obtained from Caldera a facsimile copy of the Coneco sales brochure which he also provided to Grandchamp. Plaintiff's SMF ¶ 50; Defendants' Responsive SMF ¶ 50.[4] On January 11, 2000 Grandchamp signed CBS's standard confidentiality agreement. Defendants' SMF ¶ 7; Plaintiff's Responsive SMF ¶ 7; Confidentiality Agreement (Exh. A to Affidavit of Donald Caldera, submitted with Defendants' SMF) at [2]. Grandchamp asked King to set up a meeting in New York to see the plant, Plaintiff's SMF ¶ 50; Defendants' Responsive SMF ¶ 50, and the two men traveled to Glens Falls, New York, the next day to meet with Bowen, Defendants' SMF ¶ 8; Plaintiff's Responsive SMF ¶ 8. Later in January 2000 King, Garth Grandchamp, Mark Grandchamp and Eric Mehnert from the plaintiff again went to the Coneco plant in New York. *Id.* They were given a tour of the plant. *Id.* ¶ 10.

On January 13, 2000 King received a fax from Caldera enclosing a machinery and equipment appraisal for the Coneco plant. Plaintiff's SMF ¶ 53; Defendants' Responsive SMF ¶ 53.[5] King forwarded this appraisal to Garth Grandchamp. *Id.* King prepared a valuation of Coneco, coming up with a proposed value of between $4.5 million and $6.5 million, which he presented to the plaintiff. *Id.* ¶ 54. Garth Grandchamp and Bowen negotiated a purchase price during a series of telephone calls. *Id.* ¶ 55.[6] King presented the plaintiff was

---

4. The defendants deny this paragraph of the plaintiff's statement of material facts, but only on the basis of their motion to strike the paragraphs of the initial declaration of Garth Grandchamp that are cited by the plaintiff in support of the paragraph. Defendants' Responsive SMF ¶ 50. I have denied the motion to strike those paragraphs of the declaration and this paragraph of the plaintiff's statement of material facts accordingly must be deemed admitted.

5. The defendants deny this paragraph on the same basis as their denial of paragraph 50. I denied that portion of their motion to strike and paragraph 53 is thus deemed admitted as well, to the extent supported by the cited paragraphs of the declaration.

6. The defendants deny this paragraph on the same basis as their denial of paragraph 50. I denied that portion of their motion to strike

a proposed letter of intent he had received from Caldera. *Id.* ¶ 56. The plaintiff rejected this draft and proposed a different draft of the letter, which King sent to Caldera. *Id.* After some modifications were made to its terms through telephone conversations between Grandchamp and Bowen, Grandchamp signed the final version of the letter of intent. *Id.* An asset purchase agreement ("APA") was drafted in Maine and presented to King. *Id.* ¶ 57.[7] Grandchamp and Bowen then had a telephone conversation concerning the law that would govern resolution of any disputes that might arise between them. *Id.* ¶ 58.[8] Bowen agreed that Maine law would govern. *Id.*

In early February 2000 Coneco and the plaintiff entered into the APA. Defendants' SMF ¶ 13; Plaintiff's Responsive SMF ¶ 13. The purchase price for the assets was $4.25 million, plus certain specific adjustments for inventory and work in process at the time of closing. *Id.* ¶ 14. The assets are located in New York. *Id.* ¶ 18. After the APA was executed, Bowen and Grandchamp spoke by telephone concerning the payment of a $50,000 deposit in the absence of the schedules listed in the APA. Plaintiff's SMF ¶ 59; Defendants' Responsive SMF ¶ 59. During this call, Bowen reaffirmed the accuracy of the information in the offering brochure and stated that the forthcoming schedules would confirm that information. *Id.* The pre-tax profit for 1999 in the pro forma in the offering memorandum had been forecast at $549,460. *Id.* ¶ 62. In January 2000 Caldera informed King that the pre-tax profit for 1999 was more than likely in the vicinity of $340,000. *Id.* King did not share this information with Garth Grandchamp. *Id.* ¶ 63.

The purchase price offered by the plaintiff was based on a multiple of represented earnings before interest, taxes, depreciation and amortization ("EBITDA"). *Id.* ¶ 66. For the Coneco plant, the plaintiff considered a range of between three and four times what it perceived the earnings to be based on the information in the brochure. *Id.* To calculate EBITDA, net income is added to interest, taxes, depreciation and amortization. *Id.* EBITDA is used to determine cash flow for financing a business, because it shows income without financing costs or taxes. *Id.*

When Grandchamp attempted to obtain financing for the purchase, he discovered that the machinery and equipment appraisal received from Coneco, which he had provided to the plaintiff's prospective lender, misrepresented the number of presses in the plant, and, as a result, overstated the value of Coneco's machinery and equipment by more than $500,000. *Id.* ¶ 71.[9] The bank then advised Grandchamp that it wanted its own appraisals on the Coneco equipment and real estate and Grandchamp was required to spend significant additional time resolving financing and other issues. *Id.* At some point prior to the closing, Grandchamp became award

---

and paragraph 55 is thus deemed admitted as well.

7. The defendants deny this paragraph on the same basis as paragraph 50. I denied their motion to strike the paragraph of the initial Grandchamp declaration at issue and paragraph 57 is accordingly deemed admitted.

8. The defendants deny this paragraph on the same basis as paragraph 50. I denied their motion to strike the paragraph of the initial Grandchamp declaration at issue and paragraph 58 is accordingly deemed admitted.

9. The defendants deny this paragraph on the same basis as paragraph 50. I have denied their motion to strike the paragraph of the initial Grandchamp declaration cited in support of this paragraph and accordingly paragraph 71 is deemed admitted.

of Coneco's 1999 financial information, which included an internal profit and loss statement for the calendar year that showed a gross margin of 20.1%, a figure inconsistent with the representation of gross profit set forth in the offering brochure. *Id.* ¶ 72. Grandchamp discussed this issue extensively with Bowen who reassured Grandchamp that reliance on the gross profit information in the brochure in setting the purchase price for Coneco's assets had been justified. *Id.* Bowen explained that one-time-only events had been responsible for a temporary drop in Coneco's margin and assured Grandchamp that the Coneco plant would meet a 27% gross profit level, which was above the 23% level represented in the brochure. *Id.* Grandchamp continued to rely on the representations in the brochure. *Id.*

The offering memorandum is inaccurate in stating that the plant has "state of the art equipment" and in representing that the building has 25,000 square feet when it actually has only slightly more than 24,000 square feet. *Id.* ¶¶ 73–74. Bowen read the offering memorandum and did not object to the use of the term "state of the art" to describe Coneco's equipment. *Id.* ¶ 76. The offering brochure also represents that Coneco had high resolution scanning available for spot and four-color process jobs as well as digital color proofing. *Id.* In fact, Coneco did not yet have any equipment that would fit that description and would have had to use an outside service in Albany to do this type of work. *Id.*

The closing on the APA occurred on July 28, 2000 in Glens Falls, New York. Defendants' SMF ¶ 19; Plaintiff's Responsive SMF ¶ 19.

The plaintiff seeks damages based on, *inter alia,* its alleged reliance on pro forma financial information for 1999 summarized in the brochure; equipment that it purchased from Coneco that was not "state of the art" or "about four years old," as stated in the brochure and orally; its purchase of new hardware and software for the pre-press area after the closing that it contends was necessary to bring the area up to minimally accepted standards; a need to replace a Mueller Martini perfect binder; fewer square feet in the plant than represented in the brochure; necessary improvements to the plant's electrical system; and failure to meet an agreed gross profit target in August 2000. *Id.* ¶¶ 23, 25–26, 27–28, 30, 35–37, 38, 44–45. In January 2001 the plaintiff executed an agreement for release of escrow funds. *Id.* ¶ 46. This action was filed in January 2002. Docket.

## B. Discussion

The defendants contend that they are entitled to summary judgment on all claims based on alleged written or oral statements extrinsic to the APA; that the plaintiff's tort claims are barred because they duplicate its breach-of-contract claims, the plaintiff cannot offer evidence to establish the elements of its misrepresentation claims and New York law bars such claims;[10] that they are entitled to summary judgment on the claim concerning the Mueller Martini perfect binder because it was in good operating condition when sold; that they are entitled to summary judgment on the calculation of the value of work in progress ("WIP") made in connection with the closing; and that they are entitled to summary judgment on the count of the amended complaint alleging slander of title due to a lack of evidence of damages. Summary Judgment Motion at 5–24. I will consider these arguments in

10. The parties disagree on the question whether Maine or New York law applies to the non-contractual claims asserted by the plaintiff.

the approximate order in which they are raised by the defendants.

*1. The integration clause in the APA.* The APA includes the following paragraphs:

> *Nature of Representations.* The contents of all exhibits certificates, letters, written statements, schedules, lists or other instruments delivered or executed pursuant to this Agreement by or on behalf of Seller or Shareholders on the one hand, or by Buyer on the other, pursuant hereto or in connection with the transactions contemplated herein shall, in addition to the representations and warranties contained in this Agreement, be deemed representations and warranties by Seller, Shareholders, or Buyer, respectively. No representation or warranty by Seller or Shareholders in this Agreement or in connection with this transaction contains or will contain any untrue statement of a material fact, or omits or will omit to state a material fact required to be stated therein or necessary to make the statements contained therein not misleading or necessary in order to provide a prospective purchaser with proper information as to the Business.

APA (attached to Summary Judgment Motion), Article VIII, § 1.

> *Entire Agreement.* This instrument embodies the whole agreement of the parties. There are no promises, terms, conditions, or obligations other than those contained herein. All previous negotiations between the parties, either verbal or written, not herein contained are hereby withdrawn and annulled. This contract shall supercede all previous communications, representations, or agreements, either verbal or written, between the parties hereto.

*Id.* Article IX § 9.

■■■ The defendants contend that the latter paragraph, a form of integration clause, precludes any claims based on statements made in the CBS sales brochure and oral statements attributed to the defendants. Summary Judgment Motion at 5–14. The plaintiff responds that the former paragraph, which it characterizes as a savings clause, makes any such representations part of the APA and enforceable thereunder. Plaintiff's Objection to Defendants' Motion for Partial Summary Judgment, etc. ("Summary Judgment Opposition") (Docket No. 28) at 2–6. Maine law, which applies to claims arising under the APA by its terms, APA Art. IX § 11, provides that courts must avoid an interpretation of a contract that renders meaningless any particular provision in the contract, *SC Testing Tech., Inc. v. Department of Envtl. Protection,* 688 A.2d 421, 424 (Me.1996).

■■■ The defendants contend that the language of the survival clause "is necessarily limited to documents delivered *after* the execution of the APA," Defendants' Reply Brief in Support of Motion for Partial Summary Judgment ("Reply") (Docket No. 30) at 2 (emphasis in original), but that reading of the language is much too strained. Nor does the plaintiff's position "eviscerate" the integration clause, as the defendants contend in the alternative. *Id.* at 2–3. The integration clause excludes all terms, promises and negotiations not included in the APA. The survival clause expressly incorporates into the APA all written instruments delivered or executed in connection with the sale of assets contemplated in the APA, regardless of the time of execution or delivery. If the language of the survival clause were only directed to documents delivered after execution of the APA, the alternative language of the final sentence of the clause, "contains or will contain ... omits or will omit ...," would be unnecessary. If the

CBS sales brochure was delivered in connection with the sale that is the subject of the APA, and nothing in the summary judgment record suggests that it was not, its representations must be "deemed representations and warranties by Seller" included in the APA. *See generally Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 518–19 (6th Cir.1999) (language of entire agreement must be considered together with integration clause to determine what material is included in agreement and thus not excluded by integration clause).

The language of the survival clause does not include oral representations, however, and such representations are expressly excluded by the integration clause. The plaintiff does not address oral representations made before the execution of the APA in its opposition to the motion for summary judgment. Based on the submissions of the parties, the defendants are entitled to summary judgment on any claims based on alleged oral representations made before the execution of the APA.[11]

*2. Reasonable reliance.* The defendants next argue that any reliance by the plaintiff on the representations in the CBS sales brochure was unreasonable as a matter of law. This is so, they contend, because the plaintiff "acknowledged in the Confidentiality Agreement that it would not rely on the information in the Brochure," information obtained by the plaintiff was inconsistent with the information in the brochure and specific warranties are given in the APA concerning the condition of the assets and the accuracy of financial documents. Summary Judgment Motion at 13, 14–17.

To the extent that this argument applies to the plaintiff's contract claims, the APA also provides that "[n]o information or knowledge obtained either independently or as a result of investigation of the Business shall diminish or otherwise affect the representations and warranties of Seller." APA Art. V § 1. Thus, the defendants cannot succeed on their second ground.[12] The fact that specific warranties are included in the APA as to some or all of the plaintiff's claims does not necessarily make its reliance on information in the sales brochure so unreasonable that the issue may not be presented to the jury. Indeed, the defendants do not

11. The plaintiffs correctly point out that the parol evidence rule does not bar evidence of representations or oral agreements made subsequent to the execution of the APA. Summary Judgment Opposition at 12. However, in this case, as the defendants point out, Reply at 6, the APA addresses such representations by providing that it "may be amended or modified only by a written instrument executed by the parties hereto," APA Art. IX § 3. It is not possible to tell from the summary judgment record whether any of the subsequent representations on which the plaintiff will rely may fairly be characterized as amendments or modifications of the APA, as opposed to additions. The defendants are entitled to summary judgment on claims based on oral representations made after the execution of the APA, not reduced to writing, that amend or modify a term of the APA.

12. The defendants also contend that the plaintiff had a duty to raise any concerns about discrepancies between the information in the sales brochure and that provided in the schedules attached to the APA and that its failure to do so constitutes a waiver of its breach-of-contract claim. Summary Judgment Motion at 9. There is no evidence in the summary judgment record to support the necessary foundation for this assertion – that all of the plaintiff's contract claims arising out of the brochure are based on information that is refuted by the information contained in the schedules appended to the APA. Indeed, the information submitted by the plaintiffs suggests a contrary conclusion. *E.g.*, Plaintiff's SMF ¶¶ 59, 63, 67, 72.

identify any of the specific warranties upon which they rely so that the court may compare them with the information in the brochure in order to determine whether the degree of difference in each instance makes any reliance on the information in the brochure unreasonable. Finally, the provision of the confidentiality agreement on which the defendants rely does not constitute an admission by the plaintiff that it will not rely on any information in the brochure with respect to claims against the defendants. The paragraph provides:

> I understand that the information provided by the Seller to CBS has not been verified by CBS for its accuracy, and that such information may not be complete or may not provide me with all the information that is necessary for me to accurately evaluate the condition of the subject Business I am interested in purchasing. I understand that I can ask CBS to obtain from the Seller any information I reasonably request, and that the Seller will endeavor to provide all such information reasonably requested. CBS will not verify the accuracy or completeness of the information provided. I will rely on my own investigation to determine whether I ultimately wish to purchase any Business listed with CBS, and agree to release and/or hold CBS, its agents, and/or employees harmless against any action, claims, demands, or damages against that company by reason of the inaccuracy or incompleteness of any information provided to me with respect to any Business I might purchase.

Country Business Services LLC, Confidentiality Agreement (Exh. A to Affidavit of Donald Caldera, submitted with Defen-

dants' SMF) ¶ 5. The defendants contend that language in the first paragraph of this agreement "is also crystal clear that Coneco is a third-party beneficiary to the agreement." Summary Judgment Motion at 9. What is "crystal clear" from the language of the confidentiality agreement is that the plaintiff agreed not to pursue any claims against CBS on the basis of any information provided to the plaintiff through CBS. The third-party-beneficiary designation to which the defendants refer appears on its face to apply only to the first paragraph of the agreement, which is the confidentiality provision. Even if the designation could reasonably be read on its face to extend to the entire agreement, it simply cannot be stretched to immunize the defendants in this case. Under Maine law, which is applicable to the plaintiff's contract claims, a third-party beneficiary is one who may sue to enforce a contract to which it is not a named party but of which it is an intended beneficiary. *Fleet Bank of Maine v. Harriman,* 721 A.2d 658, 660–61 (Me.1998). That is far different from using a contract to which they are not named parties to shield the defendants from liability imposed by a different contract. *See, e.g., Trans–Bay Eng'rs & Builders, Inc. v. Hills,* 551 F.2d 370, 378 (D.C.Cir.1976) (third-party beneficiary may not avoid burdens of contract it seeks to invoke). The defendants are not entitled to summary judgment on any of the plaintiff's remaining contract claims on this basis.

With respect to the tort claims, the analysis and outcome are the same with respect to the arguments based on the confidentiality agreement[13] and the specific warranties in the APA, whether New York or Maine law applies. *See Travel Servs. Network, Inc. v. Presidential Finan. Corp.*

---

**13.** The parties differ on the question whether New York or Maine law applies to the plaintiff's tort claims. New York law and Maine law are essentially the same with respect to

the definition of a third-party beneficiary. *See LaSalle Nat'l Bank v. Ernst & Young LLP,* 285 A.D.2d 101, 729 N.Y.S.2d 671, 676 (App. Div.2001).

*of Massachusetts,* 959 F.Supp. 135, 145–46 (D.Conn.1997) (contractual provision making prior representations nonactionable applies to both contract and tort claims). The defendants do not specify the information allegedly obtained by the plaintiff that was so inconsistent with the representations in the sales brochure or any oral representations made to the plaintiff that its reliance on those representations could only be deemed unreasonable as a matter of law. In the absence of such specificity, this argument goes to the weight of the evidence on this issue and thus cannot provide the basis for summary judgment. The defendants' reliance on *Yerdon v. Towery Publ'g, Inc.,* 749 F.Supp. 319 (D.Me.1990), with respect to their reasonable reliance argument, Summary Judgment Motion at 16–17, is misplaced. The holding in that case was based on the fact that a contractual provision was "flatly contradictory" to prior oral assurances on which the plaintiff's claim was based together with the presence of an integration clause in the contract. 749 F.Supp. at 323. Here, the defendants have not pointed to any provisions in the APA or any closing documents that flatly contradict the representations on which the plaintiff bases its claims.[14]

██ *3. Duplication of claims.* The defendants contend that the plaintiff's tort claims for negligent and intentional misrepresentation "are based on the same conduct as the breach of contract claims" and are asserted by the plaintiff "to get its contract claims in the back door by recasting them in tort." Summary Judgment Motion at 13. They argue that under the circumstances of this case both New York and Maine law bar the plaintiff's use of tort claims. *Id.* at 15–17. However, the

case law cited by the defendants does not support their position. In *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), the plaintiff "made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations," *id.* at 604, 157 N.E.2d 597. As discussed above, that is not the case here; the written representations on which the plaintiff relies are incorporated into the APA. In *Francis v. Stinson,* 760 A.2d 209 (Me. 2000), the situation was similar; the agreement at issue contained language that "clearly contradicted" the oral promise previously made to the plaintiff, *id.* at 218. Here, where the representations in the sales brochure are incorporated into the APA by its terms, there can be no such clear contradiction. Maine law does not generally prohibit the pleading of theories of breach of contract and tort arising out of the same conduct. *See, e.g., Jones v. Route 4 Truck & Auto Repair,* 634 A.2d 1306, 1307–08 (Me.1993).

██ *4. Economic Loss Doctrine.* New York law provides that damages properly characterized as economic loss are not recoverable in an action based on negligent misrepresentation. *General Elec. Co. v. A.C. Towne Corp.,* 144 A.D.2d 1003, 534 N.Y.S.2d 283, 285 (App.Div. 1988). "Economic loss" is damage other than personal or property injury that is remedial in contract. *Orlando v. Novurania of Am., Inc.,* 162 F.Supp.2d 220, 225 (S.D.N.Y.2001). That is the type of damage alleged by the plaintiff here. The doctrine apparently applies to intentional

---

14. The plaintiff's reliance on case law concerning fraud in the inducement to support its position on this issue, Summary Judgment Opposition at 11, is also misplaced. The amended complaint does not make a claim of fraud in the inducement nor can it fairly be read to seek rescission of the APA.

as well as negligent misrepresentation. *Id.*

Although the Maine Law Court has not addressed the question directly, in *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990), it allowed a plaintiff to recover on a theory of negligent misrepresentation after conveyance of real property by warranty deed. This is substantially less than a "rejection of [the] economic loss rule," as the plaintiff characterizes it,[15] Summary Judgment Opposition at 10 n. 8, but the lack of clear direction on this question in Maine law makes it necessary to determine whether Maine or New York law applies to the tort claims asserted by the plaintiff in this action.

■ "Maine applies the provisions of the Restatement (Second) of Conflict of Laws to choice of law determinations in tort cases," *Ricci v. Alternative Energy Inc.*, 211 F.3d 157, 165 (1st Cir.2000), and accordingly this court must do so as well. With respect to the plaintiff's misrepresentation claims, the only claims addressed by the motion for partial summary judgment at this point, section 148 of the Restatement applies. That section provides, in relevant part:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations ... [and]

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of he defendant.

Restatement of the Law Second – Conflict of Laws § 148 (1971). The comments to this section state, *inter alia*, that the place of a plaintiff's reliance is a more important contact when it is confined to a single state; that the place where the misrepresentations were received is not so important a contact as the place where reliance took place; that the place where the misrepresentations were made is a more important contact when the representations were made only in one state; that the plaintiff's principal place of business is substantially significant when the loss is pecuniary in nature; that the place where a tangible thing that is the subject of the transaction is a contact of some importance, and of particular importance when the subject is land; and that "[i]f any two of the above-mentioned contacts, apart from the defendant's ... state of incorpo-

---

15. Indeed, the Law Court has adopted the rule insofar as a claim arises out of a product's injury to itself. *Oceanside at Pine Point*

*Condominium Owners Ass'n v. Peachtree Doors, Inc.,* 659 A.2d 267, 270 (Me.1995).

ration or place of business, are located wholly in a single state, this will usually be the state of the applicable law." *Id.* comments f–j. Here, the only contacts in the list that are located wholly in a single state, reading the summary judgment record with the benefit of reasonable inferences drawn in favor of the plaintiff, are the plaintiff's place of business (Maine) and the location of the tangible things that are the subject of the transaction (New York). The evidence may reasonably be interpreted to show that the plaintiff acted in reliance in both states;[16] that the plaintiff received the alleged misrepresentations in both states, although more were received in Maine; that the defendant made the misrepresentations in both states, although more were made in New York; and that the place where the plaintiff was to render performance could be either state. Under these circumstances, the fact that one of the subjects of the transaction was real property located in New York, APA at 1, is the determining factor. I conclude that New York law applies to the plaintiff's tort claims based on misrepresentation (Counts III, IV, VIII, IX, XII and XIII of the amended complaint) and the defendants are accordingly entitled to summary judgment on those claims pursuant to the economic loss doctrine as it is applied in New York.[17]

 *5. The Mueller Martini perfect binder.* The defendants contend that they are entitled to summary judgment on the plaintiff's claim, arising out of the language of the APA, for the cost of replacing a piece of equipment known as the Mueller Martini perfect binder. Summary Judgment Motion at 18–19. They assert that the evidence can only be interpreted to demonstrate that the binder was in good operating condition and repair as represented in the APA, and, in the alternative, that the plaintiff's damages should be limited to the budgeted cost of maintenance and repair of this machine in 2001.[18] *Id.* With respect to the first argument, the summary judgment record contains evidence that would allow a reasonable jury to conclude that the binder was not in good operating condition at the time of transfer. Plaintiff's Responsive SMF ¶¶ 32–34; *see generally S.A. Carmeuse v. M.J. Stavola Indus., Inc.,* 823 F.Supp. 125, 127 (S.D.N.Y.1993). As to the second argument, for which the defendants cite no authority, the fact that the plaintiff chose to attempt to keep the binder working in the year immediately following the transfer does not necessarily mean that the machine was in good operating condition or that the plaintiff only suffered as damages budgeted maintenance and repair costs as a result of the breach of the APA.

16. The plaintiff asserts that Garth Grandchamp signed the APA in Maine, Plaintiff's SMF ¶ 56, although the defendants dispute this based on Grandchamp's deposition testimony, Att. A at 17–18. The parties agree that closing on the transaction occurred in New York. Defendants' SMF ¶ 19; Plaintiff's Responsive SMF ¶ 19.

17. Were I to conclude that Maine law applies to the plaintiff's misrepresentation claims, I would not consider the defendants' contentions, raised for the first time in their reply brief, Reply at 6–7, that some of the alleged misrepresentations are not actionable because

they are merely predictions about future events or expressions of opinion. *In re One Bancorp Sec. Litig.,* 134 F.R.D. 4, 10 n. 5 (D.Me.1991).

18. The defendants also contend that the plaintiff may not recover based on a representation in the sales brochure that all equipment being sold was "state of the art" or "about four years old." Summary Judgment Motion at 11–12. For the reasons discussed above, these representations were incorporated into the APA and may provide a basis for recovery with respect to the binder.

This is a question that must be reserved for the factfinder.

■ *6. Condition of the plant.* The defendants assert that they are entitled to summary judgment on the plaintiff's claims with respect to the square footage of the plant and the condition of its electrical system. Summary Judgment Motion at 20–21. Their only argument with respect to the size of the plant is that any representation concerning square footage does not appear in the APA. *Id.* at 20. Such a representation was made in the sales brochure, Plaintiff's SMF ¶ 73; Defendants' Responsive SMF ¶ 73, and for the reasons already discussed, such representations were incorporated into the APA. Accordingly, the defendants are not entitled to summary judgment on this claim.

With respect to the electrical system, the defendants argue that no representations in the APA address this claim. Summary Judgment Motion at 21. In response, the plaintiff identifies two representations in the APA that it contends were breached. Summary Judgment Opposition at 17–18. The defendants then belatedly contend that expert testimony is required on this issue and has not been offered. Reply at 9. For purposes of summary judgment, this argument comes too late. *In re One Bancorp Sec. Litig.,* 134 F.R.D. at 10 n. 5. The defendants are not entitled to summary judgment on this claim.

■ *7. Work in Progress.* The defendants assert that they are entitled to summary judgment on any claims based on Article I, section 7 of the APA dealing with adjustment to the sales price to reflect work in progress due to the plaintiff's execution of a release of all claims arising under this section of the APA. Summary Judgment Motion at 21–22. The plaintiff responds that it has provided sufficient

evidence to raise the question whether the release is invalid due to fraud. Summary Judgment Opposition at 20. "While it is true that a *valid* release will extinguish a cause of action ... the release will nevertheless be set aside if shown to be the product of fraud, misrepresentation, or overreaching." *Harriman v. Maddocks,* 518 A.2d 1027, 1030 (Me.1986), quoting *LeClair v. Wells,* 395 A.2d 452, 453 (Me. 1978) (emphasis in original). The plaintiff has presented sufficient evidence to allow a reasonable factfinder to conclude that the release was obtained as a result of misrepresentation. Plaintiff's Responsive SMF ¶¶ 44, 46. Accordingly, the defendants are not entitled to summary judgment on this claim.

■ *8. Slander of title.* The defendants contend that they are entitled to summary judgment on this claim (Count XV of the amended complaint) due to a lack of evidence of damages. Summary Judgment Motion at 23. From all that appears in the summary judgment record, the plaintiff first attempted to provide such evidence in response to the motion for partial summary judgment. For the reasons discussed above in connection with the defendants' motion to strike, this evidence has been stricken. As a result, the defendants are entitled to summary judgment on this claim.

### III. Conclusion

For the foregoing reasons,

(1) the defendants' motion to strike (Docket No. 33) is **GRANTED** as to the statement "N2P's attorney addressed this misrepresentation with Coneco's counsel" in paragraph 31 of the Declaration of Garth E. Grandchamp (filed with Docket No. 29); the statement "Mr. Dorr confirmed that their calculations were 30% too high and would not reconcile with the

172

profit and loss statements Coneco had presented to N2P" in paragraph 36 of that declaration; and paragraphs 42–43 of that declaration; and otherwise **DENIED**; and

(2) I recommend that the defendants' motion for partial summary judgment be **GRANTED** with respect to any claims based on oral representations made before the execution of the Asset Purchase Agreement; any claims based on oral representations made after the execution of the Asset Purchase Agreement that amend or modify any term of that Agreement and were not reduced to writing; and Counts III, IV, VIII, IX, XII, XIII and XV of the amended complaint, and otherwise **DENIED.**

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dec. 10, 2002.