STATE OF MAINE
HANCOCK, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-01-12

Ellsworth Builders Supply, Inc.,
     Plaintiff

v.

Decision and Judgment

DONALD L. GARBRECHT
LAW LIBRARY

SEP 15 2003

Sinclair Builders, Inc. et al.,
     Defendants

Trial in this matter was held on April 17, 2003. At trial, Lawrence R. Sinclair, in his personal and representative capacity, and Terrence E. Pinkham were present with their attorneys. Following the trial, counsel filed written argument that the court has considered.

This action was commenced by Ellsworth Builders Supply, Inc. (EBS). EBS asserted claims against Sinclair Builders, Inc. (SBI) and its principal, Lawrence R. Sinclair (Sinclair), for building materials and supplies that it had sold to the corporate party, payment for which was guaranteed by Sinclair personally. EBS also included claims against Terrence R. Pinkham and his now ex-wife, Nancy S. Pinkham, because some of the material that SBI acquired from EBS was used for construction work on a building owned by the Pinkhams. EBS alleged that the cost of the materials used on the Pinkham job was $25,517.57. A comparison of the entries on the summary of account appended to the complaint and the individual invoices admitted into evidence at trial, see plaintiff's exhibit 41-81, establishes that the amount claimed by EBS against the Pinkhams is included in the larger amount that it sought to recover from SBI and Sinclair. Among other claims, EBS sought to enforce a mechanic's lien that it purportedly placed on the property where the building was located.

1

Although the Pinkhams filed a responsive pleading to EBS' complaint, SBI and Sinclair filed an informal response in which Sinclair wrote that he did not dispute EBS' claim for the outstanding balance on its account there. This response formed the basis on which EBS moved for judgment on the pleadings. In April 2002, the court granted that motion, and judgment was entered against SBI and Sinclair in the amount of $42,818.25, plus interest and attorney's fees. This is the same amount that, in its complaint, EBS alleged that SBI and Sinclair owed to it. Neither SBI nor Sinclair filed a cross-claim against either of the Pinkhams.

In January 2003, EBS and SBI and Sinclair entered into a settlement agreement and release regarding the judgment that the court had entered in favor of EBS against the latter two parties. *See* defendant's exhibit 1. Under the terms of that agreement, SBI and Sinclair paid EBS the sum of $42,500 in satisfaction of EBS' claim in this case. The agreement also included comprehensive and mutual releases. The agreement contains the following provision: "Releasor [EBS] hereby assigns to Releasees [SBI and Sinclair] all rights, causes of action and claims that it has or may have against Terrence E. Pinkham and Nancy S. Pinkham, in connection with any and all disputes set forth in Civil Action Docket No. RE-01-12." That docket number is associated with the proceeding at bar. On the basis of this agreement, SBI and Sinclair successfully moved for substitution of parties. Under the resulting configuration, SBI and Sinclair assumed the role of the plaintiff. Because they did so pursuant to the assignment by EBS of its claims to them, they now may pursue only those claims that EBS could have pursued against the Pinkhams. Because neither SBI nor Sinclair had filed a separate claim against the Pinkhams, any separate rights they may have had have not been raised and thus cannot form the basis for relief now.

By means of a motion to dismiss and on the basis of the trial record, the Pinkhams contend that the agreement between EBS and SBI and Sinclair insulates them from liability to SBI and Sinclair. They argue that any claim that EBS may have had against them was extinguished by the terms of that agreement. As is noted above, EBS' claim against the Pinkhams was completely subsumed within its claim against SBI and Sinclair. When EBS reached a settlement with SBI and Sinclair and discharged its claim against them, it also necessarily waived any rights it might have to proceed against the Pinkhams.

2

The amount of the settlement was slightly less than the amount of the balance that EBS alleged was owed on SBI's account. EBS also sought recovery for attorney's fees and interest at the contractual rate (18%). The amount of the settlement was well in excess of the amount that EBS claimed was owed to them by the Pinkhams. At the very least, SBI and Sinclair, standing in EBS' shoes, have failed to demonstrate that any difference between EBS' total claim and the amount it actually recovered under the settlement can be attributed to any claim against the Pinkhams. Thus, on this record, SBI and Sinclair cannot show that EBS' claims against the Pinkhams survived the settlement and discharge.[1]

In effect, SBI and Sinclair seek to use the assignment as a means to pursue a claim for contribution against the Pinkhams. That, however, is an independent theory of liability and was lost when SBI and Sinclair failed to file a cross-claim against the Pinkhams. SBI and Sinclair argue that they could have resolved their claim against EBS earlier or prior to the commencement of this case, and so the release should not operate to bar their right to pursue the assigned claims. As the Pinkhams note, however, the timing of the settlement is immaterial. Instead, the release operated to conclude the larger dispute, of which the claims involving the Pinkhams were merely one part.

Even if EBS' claims against the Pinkhams survived the execution of its settlement agreement with SBI and Sinclair, those claims would not succeed on their merits. EBS had asserted three claims against or involving the Pinkhams: breach of contract by the Pinkhams as third-party beneficiaries (count 4), unjust enrichment (count 5) and mechanic's lien (count 3).

---

[1] Presumably, because EBS accepted less than the amount of its full claim against SBI and Sinclair, EBS could have reserved its claims against the Pinkhams by applying the settlement proceeds to that part of SBI's accounts that were unrelated to its work for the Pinkhams. EBS did not do so, and thus it is impossible to establish the allocation of the settlement proceeds among the numerous invoices that were the foundation for the complaint.

**Third-party beneficiary contract.** In count 4, EBS alleged that the Pinkhams were third-party beneficiaries of the contract it had with SBI.[2] The complaint alleges that the Pinkhams are liable for the cost of the materials that SBI used to perform construction on their building. The complaint does expressly allege that SBI breached its agreement with EBS. There is no similarly express allegation that the Pinkhams breached a contract, although that allegation may be implied. In support of the viability of this claim, SBI and Sinclair rely on *Devine v. Roche Biomedical Laboratories*, 659 A.2d 686 (Me. 1995). This authority, however, is inapposite because in that case, the party seeking to enforce contractual rights was not a party to the agreement. Rather, Devine was outside of the contract but attempted to enforce contractual rights as a putative third-party beneficiary, against a party who had entered into a contract. Here, EBS alleged expressly that it sought to have the Pinkhams held liable on the basis of *its* contract with SBI and Sinclair. Thus, EBS seeks to impose contractual liability on a person who was not a party to the action. This contrasts with the situation in *Devine*, where a person who was not a party to the contract sought to enforce an obligation that was already imposed on the defendant, because the defendant was a party to the contract.

*Devine* and a similarly configured case, *Fleet Bank of Maine v. Harriman*, 1998 ME 275, 721 A.2d 658, rest their third-party beneficiary analysis on the Restatement of Contracts. Under the Restatement, a third-party beneficiary is, in fact, a beneficiary rather than a party who becomes an obligor. *See, e.g.* Restatement (Second) of Contracts § 302 (1981) (""... a beneficiary of a promise is an intended beneficiary if recognition *of a right to performance in the beneficiary* is appropriate to effectuate the intention of the parties and..." other conditions are satisfied) (emphasis added); *id.*, § 304 ("A promise in a contract creates a duty in the promisor *to* any intended beneficiary to perform the promise, *and the intended beneficiary may enforce the duty.*") (emphasis added). SBI and Sinclair have cited no authority to support its argument that a person outside of the contract may be exposed to liability under the contract. Therefore, the Pinkhams cannot be found liable under this theory.

---

[2] EBS did not allege that *it* was the third-party beneficiary of the construction contract between SBI and the Pinkhams, and the court does not analyze EBS' rights under that theory.

4

**Unjust enrichment.** In order to prevail on the equitable claim of unjust enrichment, a plaintiff must prove that it conferred a benefit on the defendant, that the defendant appreciated or knew of the benefit, and that "the acceptance or retention by the defendant of the benefit [is] under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Estate of White*, 521 A.2d 1180, 1883 (Me. 1987), *quoted in George C. Hall & Sons, Inc. v. Taylor*, 628 A.2d 1037, 1039 (Me. 1993). The Pinkhams correctly note that the Law Court's analysis in *Hall* is dispositive here. Where an obligee (such as George C. Hall & Sons, Inc, and, in this case, EBS) is able to obtain payment on the claim from a party to the contract creating the obligation, then the obligee cannot demonstrate that it is inequitable for the respondent in the unjust enrichment claim to retain the benefit conferred without payment. Here, EBS secured payment on nearly the entire balance owed by SBI and Sinclair. There is no evidence that EBS could not have received full satisfaction on that claim, had it pursued collection on that judgment. Thus, when this claim is seen in its proper light, namely, the claim that EBS would have had against the Pinkham, then EBS would not have been entitled to recover under a theory of unjust enrichment.

**Mechanics lien.** The street address of Pinkham's property where SBI performed the construction work is 444 Bangor Road in Ellsworth.[3] Pinkham also owns several other parcels that are nearby and are also located on the Bangor Road. On April 6, 2001, EBS recorded a mechanics lien in the Hancock County Registry of Deeds. *See generally* 10 M.R.S.A. § 3251 *et seq*. The certificate purported to memorialize a lien on property, according to the terms of the lien certificate, owned by the Pinkhams and described in a deed recorded at book 1391 page 14 of the Hancock County Registry of Deeds. The lien was to enforce an obligation of $25,066.92, which is the same amount that EBS sought from the Pinkhams in its claims for money damages in this case.

Unfortunately, the property described in the deed identified in and appended to the certificate of lien was *not* the property where SBI had done the work for the Pinkhams. Therefore, in March 11, 2002, EBS recorded a "corrective certificate of lien,"

---

[3] When this action was filed, the Bangor Road properties in issue were owned jointly by the Pinkhams. During the pendency of this action, the Pinkhams were divorced, and the relevant parcels of real estate were set aside to Terrance Pinkham.

purporting to create a lien on land owned by the Pinkhams and described in a deed recorded at book 1625 page 76 of the local registry of deeds. It appears the parcel identified in the corrective in fact is the situs of the building that SBI worked on. The corrective lien certificate was recorded well beyond the statutory deadline that must be met to preserve the underlying lien. *See* 10 M.R.S.A. § 3253. Here, SBI and Sinclair argue that the original certificate of lien is not void, despite the misidentification of the subject premises, by virtue of the provisions of section 3254.

Section 3254 protects a certificate of lien containing inaccurate information from invalidation if the inaccuracies "can be reasonably recognized" or if the inaccuracies bear on "the amount due for labor, materials or services. . . ." The evident purpose of this section is to allow some tolerance of errors in the substance and form of the certificate, so long as there is "substantial compliance" with the statutory requirements and the purposes of the lien statute are met. *See Durling v. Gould*, 83 Me. 134, 137-38 (1890). Those purposes are to provide notice of the amount and nature of the lien to the property owner and to prospective purchasers of the property. *Id.* A misidentification of a liened parcel, however, is such a fundamental error that it exceeds the latitude allowed by section 3254. An action on a lien is *in rem*; it does not seek relief against individuals but rather is a mechanism to perfect an interest in property. This notion by itself supports Pinkham's view that it is fatally flawed. When analogized to an *in personam* action, it is as if the plaintiff sued the wrong person.

Further, if the certificate of lien is associated with the wrong parcel, then the purpose of the recording requirement as stated in *Durling* is defeated, because the property owner and other interested parties, such as prospective purchasers, will not receive the notice that the recording requirement is designed to provide. Although Pinkham was aware of SBI's construction work, and although there is no evidence in this particular case that other people were prejudiced by the mistaken reference in the original certificate of lien, the point remains that a certificate of lien must contain certain basic information to fulfill the statutory objectives. Here, the certificate did not do so.

Accordingly, the court concludes that the certificate of lien is invalid to support *in rem* relief and that the corrective certificate of lien is of no effect.

6

The entry shall be:

For the foregoing reasons, on the plaintiff's claims against defendants Terrance E. Pinkham and Nancy S. Pinkham, as assigned to defendants Sinclair Builders, Inc. and Lawrence R. Sinclair, judgment is entered in favor of Terrance E. Pinkham and Nancy S. Pinkham. They are awarded their costs of court.

Dated: September 5, 2003

_____
Justice, Maine Superior Court

FILED &
ENTERED

SEP 0 9 2003

SUPERIOR COURT
HANCOCK COUNTY